1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAFAEL MARQUEZ AMARO, JESUS          No.  1:14-cv-00147-DAD-SAB
     ALARCON URZUA, on behalf of
12   themselves and others similarly situated,

13              Plaintiffs,            ORDER GRANTING PLAINTIFFS' MOTION
                                       FOR CLASS CERTIFICATION
14        v.
                                       (Doc. No. 33)
15   GERAWAN FARMING, INC., a
     California corporation; GERAWAN
16   FARMING PARTNERS, INC., a
     California Corporation; DOES 1–10,
17   inclusive,

18              Defendants.

19

20        On February 3, 2014, Rafael Marquez Amaro and Jesus Alarcon Urzua ("plaintiffs") filed

21   a complaint against Gerawan Farming, Inc. and Gerawan Farming Partners, Inc. ("defendants")

22   alleging violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"),

23   codified at 29 U.S.C. §§ 1801 *et seq.*, as well as various California labor laws.  (Doc. No. 2.)  On

24   December 14, 2015, plaintiffs filed a motion for class certification pursuant to Federal Rule of

25   Civil Procedure 23.  (Doc. No. 33.)  Defendants filed their opposition on February 5, 2016.  (Doc.

26   No. 51.)  Plaintiffs filed their reply brief on February 23, 2016.  (Doc. No. 55.)  On March 1,

27   2016 the motion came on for hearing before the court.  (Doc. No. 56.)  Attorneys Eric Kingsley

28   and Mario Martínez appeared on behalf of plaintiffs, and attorneys Victor Jih, Ron Barsamian,

                                        1

and Daniel Allender appeared on behalf of defendants.  For the reasons stated below, plaintiffs'
motion for class certification will be granted.

## I.  Introduction

Plaintiffs are former employees of defendants.  (Doc. No. 34-22, Declaration of Rafael
Marquez Amaro ("Amaro Decl.") at ¶ 3; Doc. No. 34-23, Declaration of Jesus Alarcon Urzua
("Urzua Decl.") at ¶ 3.)  Plaintiffs worked as crew laborers for defendants.[1]  Defendants grow and
harvest grapes, oranges, and various stone fruits in California.  (Doc. No. 33, Motion for Class
Certification ("MCC") at 3–4.)  Defendants employ seasonal workers such as plaintiffs—who are
fired at the end of each harvest and subsequently rehired for the next harvest—to assist with
"preparing trees and vines" and with harvesting fruit.  (*Id*. at 1, 4–5; Doc. No. 34-24, Gerawan's
Human Resource Employee Manual ("Employee Manual") at 3, 4.)

Tree and vine preparation takes place during the pre-harvest period and consists of field
marking, pruning, thinning, debudding, and deleafing.[2]  (MCC at 4.)  Harvest work typically
involves one of two tasks:  picking or packaging fruit.  (*Id*. at 5.)  Pickers cut grapes from the
vine, clip the bunches, and place the bunches in a tub, while packers remove the bunches from the
tubs and place them in crates for shipment to a cold storage facility.  (*Id*.; Doc. No. 34-18,
Deposition of Jose Erevia ("Erevia Depo.") at 27–28.)  Defendants pay crew laborers on either an
hourly basis, a piece-rate basis, or a mixed basis.  (MCC at 6.)  Piece-rate payment for picking
ranged between $2.50 and $5.00 per tub, and piece-rate payment for packing ranged between
$1.00 and $2.00 per box.  (*Id*.)  Field marking is also paid on a piece-rate basis, generally at five
cents per mark tied.  (*Id*. at 6.)  Crew laborers could transition from hourly to piece-rate payment
over the course of a single day.  (*Id*.)

Defendants tracked piece-rate wages owed to its workers for grapes picked and packed
through tally cards given to crew laborers at the start of each day.  (*Id*.)  Each packed tub or crate

---

[1]  In their motion, plaintiffs use the term "field worker" instead of "crew laborer."  The two terms
are used interchangeably throughout this order.

[2]  Field marking involves tying colored strings on budding crops in order to facilitate the estimate
of that season's yields.  (MCC at 4.)

an employee produced resulted in that employee receiving a punch on his tally card.  (*Id*. at 6–7.)
The number of punches would be added to calculate the total piece-rate payment owed to that
employee for his day's work.  (*Id*. at 7.)  Defendants tabulated employees' wages on a weekly
basis, checking to make sure all employees, including piece-rate employees, earned at least the
minimum wage.  (*Id*. at 7–8.)  If a piece-rate employee's weekly pay check was less than the
minimum wage for that one week period, the employee's pay check would be supplemented.
(*Id*.)

In accordance with California Labor Code § 226.7 and Industrial Welfare Commission
("IWC") Wage Order 14-2001, defendants allowed employees to take ten minute rest breaks for
every four hour period worked, or major fraction thereof,.  (*Id*. at 8; Employee Manual at 20.)
Defendants conducted audits to ensure employees were being offered rest breaks.  (Doc. No. 34-
31.)  According to defendants, they implemented a substantial wage policy change in October
2013 and began to compensate piece-rate employees for rest periods separate from those
employees' piece-rate earnings.  (Doc. No. 53, Declaration of Jose Erevia in Support of
Opposition to Motion for Class Certification ("Erevia Decl.") at ¶ 3.)  Beginning in 2013, piece-
rate employees were paid for earned ten minute rest periods at a rate of $10.00 per hour.  (*Id*. at ¶
4.)  Defendants increased this amount to $11.00 per hour in 2014 and to each employee's average
hourly piece-rate in 2015.  (*Id*. at ¶¶ 5–6.)

Plaintiffs allege defendants' practices resulted in multiple violations of federal and state
law.  More specifically, plaintiffs plead the following claims:

> (1)  For violation of the Migrant and Seasonal Agricultural
> Worker Protection Act, codified at 29 U.S.C. §§ 1801 *et
> seq*.;
>
> (2)  For failure to pay overtime and all wages due under
> California Labor Code §§ 1194 and 1198;
>
> (3)   For failure to pay minimum wages under California Labor
> Code § 1194;
>
> (4)  For failure to compensate for rest breaks under California
> Labor Code § 226.7 and IWC Wage Order 14-2001;

/////

3

1
2
     (5)     For failure to pay wages due to plaintiffs and potential class members upon being discharged under California Labor Code § 203;

3
4
5
     (6)     And for violation of California's Unfair Competition Law under California Business and Professions Code §§ 17200 *et seq.*

6
(Doc. No. 2, Complaint ("Compl.") at 11–17.)

7
Plaintiffs seek certification of a class, defined as:

8
9
10
     All persons who are employed or have been employed by GERAWAN, and who have worked one or more shifts as a non-exempt hourly field worker and paid by piece rate in the State of California since four (4) years prior to the filing of this action.

11
(*Id.* at 8.)  Plaintiffs also seek to certify the following subclasses:

12
13
14
15
     (1)     Piece-Rate Subclass:  All individuals who have been employed, or are currently employed, by Defendant Gerawan as a non-exempt, hourly "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 up to the present.

16
17
18
19
     (2)     Minimum Wage Subclass:  All individuals who have been employed, or are currently employed, by Defendant Gerawan as a non-exempt, hourly "field worker" or similar titles, from February 3, 2010 to the present, whose compensation for any shift totaled less than the minimum wage.

20
21
22
     (3)     Former Employee Subclass:  All individuals who have been employed, or are currently employed, by Defendant Gerawan as a non-exempt, hourly "field worker" or similar titles, from February 3, 2010 to the present, who were laid off at the end of a season.

23
(MCC at 2).  Plaintiffs allege that these subclasses satisfy the requirements of Federal Rules of

24
/////

25
/////

26
/////

27
/////

28
/////

4

1  Civil Procedure 23(a) and 23(b)(3).[3]

2  **II.   Legal Standard**

3      The class action is a procedural mechanism whereby the "usual rule that litigation be

4  conducted by and on behalf of the named parties only" is swept aside so that multiple parties—

5  unwieldy in number but possessing similar or identical claims—may pursue common redress in

6  an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. —, —, 133 S. Ct. 1426, 1432

7  (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, —, 131 S. Ct. 2541, 2550 (2011)).

8  *See also Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal

9  Rule of Civil Procedure 23 controls class certification and imposes a two-step process designed to

10  ensure not only that this system of representative adjudication nets expediencies for the litigants

11  and the judiciary, but that it does not sacrifice procedural fairness or zealous advocacy in the

12  process of doing so.

13      Rule 23(a) is the first hurdle that must be overcome for a case to proceed as a class action.

14  It consists of four prerequisites, often described as:  (1) numerosity, (2) commonality, (3)

15  typicality, and (4) adequacy.   If—and only if—a putative class satisfies these four requirements

16  may it then proceed to show it also satisfies one of the three subsections of Rule 23(b).

17      The party seeking class certification bears the burden of establishing conformity with

18  these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that

19  certification is warranted. *Comcast*, 133 S. Ct. at 1432; *Wal-Mart*, 131 S. Ct. at 2551.  A court

20  must review the merits of a party's substantive claim to the extent that they overlap with issues

21  touching on class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.

22

23  [3] In their briefing and at the hearing on the pending motion, plaintiffs stated that they sought certification under Rule 23(b)(2) as an alternative to Rule 23(b)(3) certification.  Certification

24  under Rule 23(b)(2), however, is inappropriate because both named plaintiffs are former employees and lack standing to pursue injunctive relief against defendants. *See Wang v. Chinese*

25  *Daily Newspaper*, 737 F.3d 538, 544 (9th Cir. 2013) (noting plaintiffs likely lacked standing "to pursue injunctive relief on behalf of the class, as none of them [were] current . . . employee[s]");

26  *see also Munoz v. Giumarra Vineyards Corp.*, No. 1:09-cv-00703, 2012 WL 2617553, at *35

27  (E.D. Cal. July 5, 2012) (holding plaintiffs were not entitled to certification under Rule 23(b)(2) because they were no longer employed by defendant and, thus, could not benefit from injunctive

28  relief).

1   2011) (citing *Wal-Mart*, 131 S. Ct. at 2551-52 and *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

2   509 (9th Cir. 1992)); *see also Blair v. The CBE Group, Inc.*, 309 F.R.D. 621, 625 (S.D. Cal.

3   2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show

4   "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a

5   class. *Ellis*, 657 F.3d at 981 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161,

6   (1982)); *see also Comcast*, 133 S. Ct. at 1432 (extending the "rigorous analysis" requirement to

7   Rule 23(b)); *Patel v. Nike Retail Services, Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at

8   *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule

9   23(b)."). If a court does decide to certify a class, it must define the class claims and issues and

10  appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g).

11      **III.    Rest Break Subclass**

12              *a.   Applicable Law*

13          California Labor Code § 226.7 and IWC Wage Order No. 5-2001 (hereinafter, "Wage

14  Order No. 5")—operating in conjunction—control the provision of rest breaks by employers to

15  non-exempt hourly employees. Labor Code § 226.7 serves as an enabling statute, mandating that

16  employers provide breaks in a manner consistent with orders set forth by the IWC, as well as

17  other authorities. Wage Order No. 5 states the specific requirements to which an employer must

18  adhere:

> Every employer shall authorize and permit all employees to take
> rest periods, which insofar as practicable shall be in the middle of
> each work period. The authorized rest period time shall be based
> on the total hours worked daily at the rate of ten (10) minutes net
> rest time per four (4) hours or major fraction thereof. However, a
> rest period need not be authorized for employees whose total daily
> work time is less than three and one-half (3 ½) hours. Authorized
> rest period time shall be counted, as hours worked, for which there
> shall be no deduction from wages.

25  8 CCR § 11140(12). California Labor Code § 226.7 reiterates that rest breaks are to be counted

26  as hours worked, and that rest breaks cannot result in a deduction of wages.

27          California law requires piece-rate employees be separately compensated for rest-break

28  periods at an amount not less than the minimum wage. CAL. LAB. CODE § 226.2; *Gonzalez v.*

*Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 44-45 (2013); *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (2013).  "[C]ompliance [with this requirement] cannot be determined by averaging hourly compensation."  *Bluford*, 216 Cal. App. 4th at 872.  Rather, "employees [must] be compensated at the minimum wage for each hour worked."  *Gonzalez*, 215 Cal. App. 4th at 45 (citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)).  While the law compels employers to "authorize and permit" rest breaks, it does not mandate employees take these breaks.  Wage Order No. 5; Cal. Dep't of Indus. Rel., Division of Lab. Standards Enforcement, Opinion Letter (Jan. 28, 2002).  In addition, employers are not required to track rest periods.  8 CCR § 11140(7)(A)(3); *see also Munoz v. Giumarra Vineyard Corporation, No. 1:09-CV-0703 AWI JLT,* 2015 WL 5350563, at *6 (E.D. Cal. Sept. 11, 2015); *In re Taco Bell Wage and Hour Actions*, No. 1:07-cv-1314 LJO DLB, 2012 WL 5932833, at *11 (E.D. Cal. Nov. 27, 2012) ("While meal beaks are required to be recorded on time cards and therefore provide a reliable record, California law does not require employers to record rest periods.").

####    *b.  Evidence*

In moving for class certification plaintiffs rely on declarations, depositions, and defendants' internal documents.  Plaintiffs include their own declarations as well as declarations from 451 of defendants' employees who, according to plaintiffs' counsel, both worked on a piece-rate basis and took a rest break.  (MCC at 9.)   Plaintiffs winnowed the 451 employee declarations—taken across a spectrum of dates within the fall of 2014—from a pool of 779 declarations, collected and distributed by defendants in response to plaintiffs' first document request.  Plaintiffs argue those declarations show workers regularly received rest breaks, and audit crews confirmed defendants made rest breaks available to all piece-rate employees.  (*Id.*)  Defendants argue the declarations show that employees could elect to, and at times did, skip rest breaks.  (Opp. at 7–8.)  The declarations themselves reflect a dispute, with some of the declarations bluntly stating that employees had total discretion when it came to taking rest breaks[4]

---

[4]  "When we are earning piece rate for picking grapes the two 10 minute breaks are offered to us and we can take them if we want, but sometimes I would rather earn a little more and only take my half hour lunch, which we are required to take."  (Declaration of Guadalupe Rebollo (Doc. No. 38-9), at ¶ 3.)

and others stating that defendants mandated that rest breaks be taken.[5]

Plaintiffs also highlight the following language from defendants' 2009 Farming Human Resources Employee Manual regarding their rest break policy:

> Employees are authorized and permitted to take 10-minute paid rest periods. Hourly employees on a fixed work schedule must take their rest periods as programmed by their supervisor. Employees working independently (e.g. truck drivers, sprayers, field service mechanics, etc.) or employees paid on a piece-rate basis must take them as close as practicable to the middle of each work period.

 (Employee Manual at 20).

Plaintiffs also point to field audits, which they claim occurred daily and verify whether a piece-rate employee took a break. (Doc. No. 34-31.) Plaintiffs provide four examples of field audits conducted on plaintiff Rafael Marquez Amaro. (*Id*.) Plaintiffs contend these documents indicate whether plaintiff Amaro took a rest break on the date of the audit. However, the audit document alone does not indicate the type of work being performed, nor are the dates of the four audits consecutive. (*Id*.) Plaintiffs have also included with their motion pay stubs, vouchers, and tally cards. (Doc. Nos. 34-28, 34-29, 34-32, 34-33, and 34-34.) However, none of these documents indicate whether plaintiffs took rest breaks on any given day. Lastly, as discussed above, defendants have introduced evidence that their wage policy changed in October 2013. At that time, defendants started to separately pay field workers for non-productive time. (Erevia Decl. at ¶¶ 3–6; Declaration of Robert Crandall ("Crandall Decl.") at ¶ 13.)

     *c. Rule 23(a)*

       *i. Numerosity*

Rule 23 requires a class be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. Pro. 23(a). This "does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *Millan v. Cascade Water Servs., Inc.*, 310

---

[5] "Sometimes in the grapes people do not want to stop, but *the crew boss tells us we have to stop or we are going to get a ticket*." (Doc. No. 36-38, Declaration of Maria del Carmen Suarez at ¶ 7) (emphasis added).

1   F.R.D. 593, 603 (E.D. Cal. Oct. 8, 2015) (quoting *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D.

2   Cal. 1981)).  *See also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008).

3   A plaintiff seeking class certification is not required to show that the number of potential class

4   members exceeds an established threshold.  *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).

5   That said, a potential class consisting of at least forty members will generally be treated as

6   satisfying the numerosity requirement.  *See Ogden v. Bumble Bee Foods, LLC,* 292 F.R.D. 620,

7   624 (N.D. Cal. 2013); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal.

8   2011) ("Courts have routinely found the numerosity requirement satisfied when the class

9   comprises 40 or more members.").

10       Here, numerosity is not contested.[6]  Even if it were, the plaintiffs would easily satisfy this

11  requirement because this proposed subclass would consist of 5,999 to 6,211 members.  (Doc. No.

12  33-3, Declaration of Jeffrey S. Petersen ("Petersen Decl.") at ¶ 13.)

13                              *ii.   Commonality*

14       Rule 23(a)(2) requires that there exist "questions of fact and law which are common to the

15  class."  Fed. R. Civ. P. 23(a)(2).  However, "[a]ll questions of fact and law need not be common

16  to satisfy the rule."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Rather, "the

17  plaintiff [must] demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart*,

18  131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Absent a

19  showing of "common contentions," a class proceeding is not justified because common

20  answers—capable of resolving "the validity of each one of the claims in one stroke"—cannot be

21  generated.  *Id.  See also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012)

22  ("[C]ommonality requires that the class members' claims 'depend upon a common contention'

23  such that 'determination of its truth or falsity will resolve an issue that is central to the validity of

24  each claim in one stroke.'").  "In the wage and hour context, the inquiry is whether the entire

25  /////

26

27  ────────────────────
    [6]  Even though defendants' expert states in his declaration that plaintiffs' expert may have
    overstated the size of the putative class by at least 5.7 percent (Crandall Decl. at ¶ 14), defendants
28  nonetheless do not contest numerosity in their opposition to the pending motion.

1   class was injured by the same allegedly unlawful wage and hour practice." *Millan*, 310 F.R.D. at

2   604 (citing *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 513 (E.D. Cal. 2014)).

3       Here, plaintiffs have made a sufficient showing to establish commonality for the piece-

4   rate subclass of employees.  Plaintiffs have come forward with evidence that defendants paid

5   employees who picked and packed grapes on a piece-rate basis and that defendants had a

6   common policy of making available—and encouraging the use of—rest breaks for these

7   employees.  Defendants do not refute this evidence.  The question of whether these uniform

8   policies, as implemented by defendants, resulted in piece-rate employees not being properly

9   compensated for rest breaks is ripe for a common answer.  *See Ontiveros v. Zamora*, No. 2:08-cv-

10  567 WBS DAD, 2014 WL 3057506, at *6 (E.D. Cal. July 7, 2014) ("Whether class members

11  were subject to a policy of piece-work compensation, whether that policy was uniformly applied

12  at [defendant-affiliated] dealerships, and whether that policy was unlawful are common questions

13  of law and fact that satisfy Rule 23(a)(2).") (and cases cited therein).[7]

14      However, defendants' wage policy change does undermine plaintiffs' ability to establish

15  commonality for the subclass as it is currently defined.  Without commenting on the merits of

16  whether these changes cured any of defendants' alleged labor code violations, the court notes that

17  the payment of non-productive time to piece-rate employees beginning in October 2013 gives rise

18  to important questions of fact and law that do not touch upon the situation of defendants' piece-

19  rate employees prior to October 2013.  Thus, all piece-rate employees across the current class

20  period are not similarly situated.  *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d

21  1111, 1125 (N.D. Cal. 2011) (decertifying a class because the class members who worked prior to

22  policy change were not similarly situated to those that worked after the change).  Rather than

23  deny plaintiffs' motion for class certification, however, the court finds that the more appropriate

24  response is to bifurcate the proposed piece-rate subclass into two subclasses:  one composed of

25  pre-October 2013 piece-rate employees and the other composed of piece-rate employees from

26  _____

27  [7]  As defendants argue, there is evidence before this court suggesting that at least some piece-rate
    workers voluntarily skipped their rest breaks—a practice allowed by California's labor laws.
    However, this is an issue which goes more to the issue of predominance and a Rule 23(b)(3)

28  analysis, than to the commonality inquiry under Rule 23(a).

1   October 2013 onward.  *See Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 296

2   (5th Cir. 2001) (noting district court may define a class "in order to ensure that the requirements

3   of Rule 23 are best satisfied"); *see also Lundquist v. Security Pac. Automotive Fin. Servs. Corp.*,

4   993 F.2d 11, 14 (2nd Cir. 1993) (noting that "the district court is not bound by the class definition

5   proposed in the complaint and should not dismiss the action simply because the complaint seeks

6   to define the class too broadly" (citation and internal quotation marks omitted)); *Feske v. MHC*

7   *Thousand Trails Ltd. Partnership*, No. 11-4124, 2013 WL 1120816, at *15 (N.D. Cal. Mar. 18,

8   2013) (noting that court had "the discretion to define a narrower sub-class").

9                       *iii.   Typicality*

10      "[T]he claims or defenses of the representative parties [must be] typical of the claims and

11   defenses of the class."  Fed. R. Civ. P. 23(a)(3).  They need not be clones; rather, all that is

12   required is that the claims or defenses be "reasonably co-extensive."  *Hanlon*, 150 F.3d at 1020

13   (The standard is a "permissive" one and requires only that the claims of the class representatives

14   be "reasonably co-extensive with those of absent class members; they need not be substantially

15   identical.").  *See also In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp. 3d 1050,

16   1098 (C.D. Cal. 2015).  "The test of typicality is whether other members have the same or similar

17   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

18   whether other class members have been injured by the same course of conduct."  *Hanon v.*

19   *Dataproducts Corp.*, 976 F.2d at 508.  Typicality is not satisfied when a class representative is

20   subject to defenses atypical to the class.  *Ellis*, 657 F.3d at 984; Hanon, 976 F.2d at 508

21   (Typicality may be lacking "if 'there is a danger that absent class members will suffer [because]

22   their representative is preoccupied with defenses unique to it.'").

23      Here, plaintiffs contend typicality is satisfied here because they, like the potential

24   members of the subclass, "were paid on a piece-rate basis."  (MCC at 20.)  According to

25   plaintiffs, they were also both aware of defendants' rest break policy, were generally reminded to

26   take their rest periods, and generally did take their rest breaks.  (Amaro Decl. at ¶¶ 10, 12, 13;

27   Urzua Decl. at ¶¶ 13, 15, 16, 17.)  Defendants argue that proposed class representative Urzua

28   */////*

1   cannot satisfy typicality because he did not perform piece-rate work until after defendants had

2   implemented the 2013 policy change.  (Opp. at 23.)

3        Plaintiffs have satisfied typicality.  The court notes that "[t]he purpose of the typicality

4   requirement is to assure that the interest of the named representative aligns with interests of the

5   class," and that "'class certification is inappropriate where a putative class representative is

6   subject to *unique* defenses which threaten to become the focus of the litigation.'"  *Hanon*, 976

7   F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fener & Smith, Inc.*,

8   903 F.2d 176, 180 (2d Cir. 1990)) (emphasis added).  While the time frame of class representative

9   Urzua's employment certainly distinguishes him from those employees who worked prior to

10  2013, it does not provide defendants with a defense unique to him.  Rather, the 2013 change in

11  compensation affected all employees.  *See Rojas v. Marko Zaninovich, Inc.,* No. 1:09-cv-00705

12  AWI JLT, 2012 WL 439398, at *18 (E.D. Cal. 2012) ("Because Plaintiffs were subjected to the

13  same pay practices as putative class members, they have a 'same or similar injury' as putative

14  class members. . . .  Further, the pay practices were 'not unique to the named plaintiffs,' and other

15  class members were subject to 'the same course of conduct.'") (quoting *Hanon*, 976 F.2d at 508).

16  Thus, while Urzua is not similarly situated to the pre-October 2013 piece-rate employees, his

17  claims are aligned with those of piece-rate employees who worked for defendants beginning in

18  October 2013 and onward.

19                    *iv.   Adequacy*

20       Plaintiffs seeking class certification must also show that they "will fairly and adequately

21  protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether named

22  plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named

23  plaintiffs and their counsel have any conflicts of interest with other class members and (2) will

24  the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"

25  *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020)).  "An absence of material conflicts of

26  interest between the named plaintiffs and their counsel with other class members is central to

27  adequacy and, in turn, to due process for absent members of the class."  *Rodriguez v. West*

28  *Publishing Company*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020.

                                          12

1    Accordingly, "[c]lass certification will be inappropriate if fundamental conflicts of interest are

2    determined to exist among the proposed class members." *Allied Orthopedic v. Tyco Healthcare*

3    *Group L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007).

4           Here, plaintiffs have come forward with sufficient evidence demonstrating that they

5    would be adequate class representatives.  Both Amaro and Urzua "have declared that they wish to

6    serve as class representatives and have no conflicts with the [c]lass concerning the issues which

7    are the subject of the litigation." (Compl. at 21.)  Plaintiffs' counsel has also submitted a

8    declaration showing that they are experienced in handling wage and hour actions and have

9    previous class counsel experience.  (Doc. No. 33-1, Declaration of Eric Kingsley ("Kingsley

10   Decl.") at ¶¶ 20–21.)

11          Defendants argue that plaintiff Amaro is ill-suited to serve as class representative because

12   he was terminated from his employment after engaging in repeated insubordinate conduct.  (Opp.

13   at 23–24.)  Defendants also argue Amaro is conflicted because the United Farm Workers filed a

14   charge with the Agricultural Labor Relations Board ("ALRB") on his behalf after he was

15   terminated, alleging that his termination was "in retaliation for protected union activity and for

16   participating in an ALRB proceeding adverse to Gerawan." (*Id*. at 24.)  According to defendants,

17   a number of Amaro's co-workers testified against him at the ALRB hearing.  (*Id*.)  Finally,

18   defendants argue that Amaro's counsel in that ALRB matter is the same counsel currently seeking

19   to represent the class in this case, and that allowing Amaro to serve as a class representative under

20   these circumstances would infringe on the requirement that class representatives serve as

21   fiduciaries of the class, "charged with monitoring the lawyers prosecuting the attorneys." (*Id*. at

22   25.)

23          The court is not persuaded that plaintiff Amaro's matter before the ALRB renders him

24   inadequate to represent the class in this case.  Generally, the adequacy inquiry tests to ensure that

25   the class representative is "part of the class and [that he] possess[es] the same interest and injury

26   as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).  *See*

27   *also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 943 (9th Cir. 2015)

28   ("Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs . . . have

1  any conflicts of interest with other class members and (2) will the named plaintiffs . . . prosecute

2  the action vigorously on behalf of the class?").  For plaintiff Amaro, this is true:  he was subjected

3  to the same allegedly unlawful rest break policies to which all other potential class members were

4  subjected, and he is seeking the same type of relief—back pay of wages—to which all other

5  potential class members may be entitled.  Defendants' arguments in opposition to Amaro as a

6  class representative are purely of a personal nature.  The characterization by defendants and some

7  potential class members of Amaro's personality as essentially being disagreeable, is clearly not

8  the type of "antagonism" Rule 23(a)(4) is aimed at curtailing.  *See Amchem Products, Inc.*, 521

9  U.S. at 626 (finding antagonism in an asbestos exposure case because a class representative

10  suffered from a current injury, calling for "generous immediate payments," whereas other class

11  members suffered only exposure, calling for "an ample, inflation-protected fund for future").

12  Accordingly, based upon the evidence submitted in support of the motion for class certification,

13  the court finds the adequacy requirement to be satisfied here.

14  　　　　　　　　　*d.  Rule 23(b)(3)*

15  　　　　　Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common

16  to class members predominate over any questions affecting only individual members, and . . . a

17  class action is [deemed to be] superior to other available methods for fairly and efficiently

18  adjudicating the controversy." *Wal-Mart*, 131. S. Ct. at 2558 (quoting Fed. R. Civ. P. 23(b)(3)).

19  *See also Tyson Foods, Inc. v. Bouaphakeo*, — U.S. —, —, 136 S. Ct. 1036, 1045 (2016).  "The

20  Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to

21  warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority

22  requirement demands courts "assess the relative advantages of alternative procedures for handling

23  the total controversy" in order to determine that "a class action is the 'superior' method of

24  resolution." Fed. R. Civ. Pro. 23(b)(3) advisory committee's note.  *See also Pointer v. Bank of*

25  *America National Association*, No. 2:14-cv-0525-KJM-CKD, 2016 WL 696582, at *8 (E.D. Cal.

26  Feb. 22, 2016).

27  /////

28  /////

14

*i. Predominance*

Rule 23(b)(3) requires a plaintiff to show "(1) that the existence of individual injury resulting from the alleged . . . violation . . . [is] capable of proof at trial through evidence that is common to the class rather than individual to its members; and (2) that the damages resulting from that injury [are] measurable on a class-wide basis through use of a common methodology." *Comcast*, 133 S. Ct. at 1430. Rule 23(b)(3)'s predominance requirement is more demanding than the commonality requirement of Rule 23(a). *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013). However, the rule does not demand that all issues be common, but rather only that common issues *predominate* over individual issues. *Id*. at 964. For example, where liability can be proved on a class-wide basis but proof of damages may depend on individual determinations, certification is not necessarily precluded. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("But damages determinations are individual in nearly all wage-and-hour class actions."); *see also Jiminez v. Allstate Insurance Co.*, 765 F.3d 1161, 1167-68 (9th Cir. 2014). When deciding if a plaintiff has satisfied Rule 23(b)(3), a court must "consider[ ] all factors that militate in favor of, or against, class certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (citation omitted).

Defendants claim that predominance cannot be satisfied in this case because there are no records showing if and when their employees took rest breaks. (Opp. at 8–9.) According to defendants, this court will be overwhelmed by individualized inquiries in order to determine which class members actually took breaks. (Opp. at 9.) In support of this argument, defendants cite to the decisions in *In re Taco Bell*, 2012 WL 5932833 and *Ordonez v. Radio Shack, Inc.*, No. 2:10-cv-07060, 2014 WL 4180958 (C.D. Cal. Aug. 15, 2014).

First, the court notes that the cases relied upon by defendants in this regard are readily distinguishable from the situation posed by the present case. In *Taco Bell*, hourly employees of the fast food chain alleged a multitude of wage and hour violations, including denial of compensated rest breaks. The employees claimed that Taco Bell's rest period policy was facially invalid because "it only provid[ed] one ten minute break for employees working between six and seven hours." 2012 WL 5932833, at *10. The employees sought certification of a rest break

15

1   subclass, which the district court denied.  *Id*. at *11.  The district court grounded its denial of

2   certification on the fact that Taco Bell did not record employee rest breaks—a practice allowed by

3   California law—noting that "[w]ithout reliable evidence in the time cards, an individual inquiry is

4   the only way to determine whether a second break [for employee's working more than four hours]

5   was or was not taken."  *Id*.

6        In *Ordonez* the court was faced with a similar situation.  2014 WL 4180958, at *6.

7   Plaintiffs had brought a class action suit against RadioShack, alleging that the electronics retailer

8   had a uniform rest period policy that resulted in employees being denied their state mandated rest

9   breaks.  *Id*. at *2.  More specifically, the plaintiffs alleged that they were often required to forego

10  their second rest break and did not receive compensation as a result.  *Id*.  The district court denied

11  plaintiffs' motion for class certification, concluding that "substantial manageability problems

12  remain[ed] regarding proof of whether and how [RadioShack's rest period] policy was actually

13  implemented."  *Id*. at *5.  Rest periods were not recorded on employees' timecards and "the

14  parties ha[d] provided conflicting declarations as to whether [RadioShack's] rest break policy was

15  implemented as written."  *Id*.  The district court noted that it was "left without a method of

16  establishing by common proof when rest breaks were or were not taken by members of the class,"

17  and as a result, concluded that the proposed class was unmanageable.  *Id*. at *6.

18       Here, unlike in *Taco Bell* and *Ordonez*, plaintiffs do not allege defendants failed to offer

19  rest breaks or that they maintained a facially invalid rest period policy.  The evidence submitted

20  already by plaintiffs readily proves otherwise.  *See* Section III.b, above.  Defendants maintained a

21  rest period policy that mimicked the language of California Labor Code § 226.7 and Wage Order

22  No. 5, reminded their employees of the availability—and the importance—of taking breaks on a

23  daily basis, and even went so far as to conduct regular audits to ensure that employees were being

24  offered rest breaks in accordance with California law.  The issue in this case is not the availability

25  of rest breaks; plaintiffs and defendants agree that class members were offered, and free to take,

26  rest breaks.  Rather, the issue is whether class members were properly compensated for these

27  breaks.  Thus, the cases relied upon by defendants are distinguishable.

28  /////

Second, because this case concerns compensation for rather than availability of rest breaks, defendants' argument concerning the predominance of individual issues also fails. Defendants' argument can be paraphrased as follows: (1) employees, who earned their wages on a piece rate basis, were free to work through offered rest breaks, as permitted by California law; (2) a piece-rate employee who worked through a rest break was not harmed because that employee was ultimately paid for the pieces produced during the rest break period; and (3) defendants did not record which employees took rest breaks, inhibiting this court's ability to determine which class members were actually harmed absent individual inquiries. (Opp. at 9–12.) Ultimately, defendants argue class certification should be denied in this case because plaintiffs will not be able to prove damages on a class wide basis. "In this circuit, however, damage calculations alone cannot defeat certification." *Leyva* 716 F.3d at 513. *See also Pulaski & Middleman, LLC* v. Google, Inc., 802 F.3d 979, 987-88 (9th Cir. 2015)[8]; *Jiminez*, 765 F.3d at 1167. This is not to say defendants' argument is completely without merit: under the Supreme Court's decision in *Comcast*, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva* 716 F.3d at 514. In addition, a plaintiff seeking class wide damages "must provide a reasonable method of calculating damages at trial." *Arredondo*, 301 F.R.D. at 542. If calculating damages in this case depended on establishing whether one of defendants' employees elected to take or forego an offered rest break, the court may well have been persuaded by defendants' argument. But that is not the case here.

Labor Code § 226.7 states that "[i]f an employer fails to provide an employee a . . . rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the . . . rest or recovery period [was] not provided." Thus, a plaintiff is entitled to compensation as

/////

/////

/////

---

[8]  Petition for certiorari filed (No. 15-1101), 84 USLW 3500 (Mar. 1, 2016).

prescribed by the statute,[9] and the availability of such compensation is a question determined solely by the actions of the employer and not those of the employee.  Here, plaintiffs allege defendants maintained a uniform rest break policy that established a paradoxical system whereby class members—because of their piece-rate status—could experience a rest or recovery period free of wage deductions—as required by California law—only by continuing to work.  Whether this scheme violated California law is a question that is "capable of class-wide resolution . . . in one stroke."  *Wal-Mart*, 131 S. Ct. at 2551. *See also Mazza*, 666 F.3d at 588.  And if this scheme violated California law, the only question remaining is whether a potential class member worked enough hours in a day to entitle him or her to one or more rest breaks.  Moreover, plaintiffs' expert has shown that this determination can be made by reviewing paystubs and payroll information.  (Petersen Decl. at ¶¶ 7, 11–13.)  Under these circumstances, the court concludes that it would not be required to engage in individual inquiries to determine damages.  Thus, the predominance requirement of Rule 23(b)(3) is satisfied as to the rest break subclass.

### ii.  Superiority

When deciding if a class action is a superior method of adjudicating the claims, courts consider the following four factors:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing the class action.

Fed. R. Civ. P. 23(b)(3).

/////

---

[9]  Under California law, the "additional hour of pay" is regarded as a "wage" and not a "penalty," and, thus, is not subject to the one-year statute of limitations governing claims for penalties pursuant to California Code of Civil Procedure § 340(a).  *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085 (N.D. Cal. 2007) (citing *Murphy v. Kenneth Cole Productions*, 40 Cal. 4th 1094, 1114 (2007).

Here, a class action is the superior method for adjudicating the claims. "Rule 23(b)(3) contemplates the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Pena v. Taylor Farms. Pac., Inc.*, 305 F.R.D. 197, 220 (E.D. Cal. 2015) (quoting *Amchem*, 521 U.S. at 617). The potential class members here fall within this contemplated purpose. As plaintiffs articulate,

> [c]lass [m]embers are seasonal agricultural workers[,] and their limited economic resources, lack of English language proficiency, and the severe difficulty of finding experienced counsel in rural areas to handle individual cases would deprive most of the [c]lass of the practical opportunity to pursue their claims.

(MCC at 24.) Absent a class action, it is very likely that many will be left without recourse—due to geographic, social, linguistic, and economic isolation—to seek vindication for the wrongs allegedly perpetrated against them. Also, the individual claims of each plaintiff and each potential class members, while definitively stated, is unlikely to be of such a large size that they militate against a class action being a superior method for their adjudication. *See id.* ("[W]hen smaller dollar amounts are in controversy, this factor generally favors certification.") (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Lastly, the court has not been made aware by the parties of any other litigation concerning the claims brought by plaintiffs on behalf of the potential claims members here, nor is the court concerned by any manageability issues raised to date.

## IV.   Minimum Wage Subclass

### a.   Applicable Law

California law requires that "employees . . . be compensated for each hour worked at either the legal minimum wage or the contractual hourly rate[.]" *Bluford*, 216 Cal. App. 4th at 872. "[C]ompliance cannot be determined by averaging hourly compensation." *Id.*

### b.   Evidence

Plaintiffs argue that defendants' minimum wage and overtime policy, as applied to piece-rate employees, violates California law, pointing to the deposition testimony of one of defendants' employees as proof. According to Jose Erevia—defendants' compliance manager—defendants offered all piece-rate employees a minimum wage guarantee, under which, if at the

1  end of a payroll period, a piece-rate employee's aggregate pay was not equal to or more than the

2  minimum wage equivalent, the employee's pay was increased to meet the minimum wage.

3  (Erevia Depo. at 21.)  Plaintiffs argue that defendants' compensation system violates California

4  law because the wage guaranteed is calculated on a weekly rather than a daily basis, as stated by

5  Mr. Erevia during his deposition.  (*Id.*)  Plaintiffs have also submitted multiple pay stubs of

6  plaintiff Urzua showing that he received less than the minimum wage for hours worked.  (Doc.

7  No. 34-33 at 26, 27, 29, 31.)  Moreover, plaintiffs have included a declaration from their attorney

8  stating his associates had reviewed Amaro's pay stubs and discovered multiple instances where

9  he was paid less than the minimum wage as well.  (Kingsley Decl. at ¶ 23.)

10          c.  *Rule 23(a)*

11              i.  *Ascertainability*

12          Defendants argue that the minimum wage subclass cannot be ascertained.  (Opp. at 17–

13  19.)  "[T]he Ninth Circuit [and] the Supreme Court [have not] explicitly acknowledge[ed] in any

14  published opinion that 'ascertainability' or 'definiteness' is a required element of class

15  certification that imposes obligations independent of the enumerated Rule 23 factors."  *Lilly v.*

16  *Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. Sept. 14, 2014).  However, in dicta and

17  unpublished opinions, the Ninth Circuit has implied that a class must be ascertainable if it is to be

18  certified.  *See id.* (listing cases).  There are three concerns a court should address when making

19  this ascertainability determination:

20              (1) whether the class can be ascertained by reference to objective
                criteria; (2) whether the class includes members who are not
21              entitled to recovery; and (3) whether the putative named plaintiff
                can show that he will be able to locate absent class members once a
22              class is certified.

23  *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258, 2016 WL 234364, at *5 (S.D. Cal. Jan. 20, 2016).

24  Determining that a class is ascertainable is "meant to ensure the proposed class definition will

25  allow the court to efficiently and objectively ascertain whether a particular person is a class

26  member."  *Pena*, 305 F.R.D. at 206.  *See also Henry v. Home Depot*, Case No. 14-cv-4858-JST,

27  2016 WL 1755398, at *8 (N.D. Cal. May 3, 2016) ("[A] class definition is sufficient if the

28  /////

1    description of the class is 'definite enough so that it is administratively feasible for the court to

2    ascertain whether an individual is a member.")

3         Defendants rely on two unpublished Ninth Circuit cases in arguing that the minimum

4    wage class cannot be ascertained in this case.  In *Williams v. Oberon Media, Inc.*, the Ninth

5    Circuit upheld a district court's denial of a motion seeking class certification of a group of

6    consumers who had enrolled in a game designer and retailer's membership program.  468 F.

7    App'x. 768, 770 (9th Cir. 2012).  The Ninth Circuit noted that the "[p]laintiffs failed to establish

8    an objective way of determining which . . . members failed to receive their monthly subscription

9    game or enrolled in the . . . program because of errors in [the defendant's] computer system as

10   opposed to the consumers' own errors or preferences."  *Id.*  Next, in *Martin v. Pacific Parking*

11   *Systems, Inc.*, the Ninth Circuit upheld a denial of class certification because "the proposed class

12   was not ascertainable . . . ."  583 F. App'x. 803, 804 (9th Cir. 2014).[10]

13        Defendants' arguments in this case based upon the Ninth Circuit's unpublished decisions

14   in *Williams* and *Martin* are unavailing.  While plaintiffs' class definition is currently overbroad,

15   /////

16   /////

17   /////

18   /////

19   ───────────────

20   [10]  In Martin, the plaintiff had sued the City of Laguna and the company that operated its parking
     lots, alleging the defendants had violated the Fair and Accurate Credit Transactions Act

21   ("FACTA").  *Rowden v. Pac. Parking Sys., Inc*., 282 F.R.D. 581, 583 (C.D. Cal. 2012) *aff'd in
     part sub nom., Martin v. Pac. Parking Sys. Inc*., 583 F. App'x 803 (9th Cir. 2014).  The FACTA

22   requires merchants "to hide all but the last five digits of the account number and entire expiration
     date of their customers' credit or debit cards."  *Rowden*, 282 F.R.D. at 583.  The plaintiff had

23   alleged that the defendants violated the FACTA by allowing parking machines to print the
     entirety of the expiration date of consumers' credit and debit cards.  *Id*. at 584.  The district court

24   held that the proposed class, consisting of all individuals that used the parking machines over a
     period of time, was not ascertainable.  The district court noted that "[a] violation of the FACTA is

25   limited to consumers[,]" and was not available to "business customers."  *Id*. at 585 (citations
     omitted).  The district court also observed that all of the potential 100,000 class members "would

26   be required to present proof of their 'consumer' purchase, and each method of proof will need to
     be examined."  *Id*.  For these reasons, the district court dismissed the motion for class

27   certification, noting that "[a] class action [wa]s certainly not an efficient method for resolving
     th[at] controversy."  *Id*. at 586.

28

1   and can certainly benefit from refinement,[11] it is not so indefinite as to make it infeasible for the

2   court to ascertain whether an individual is a member once so refined.  The key questions are

3   whether class membership can "be ascertained by reference to objective criteria" and whether the

4   definition "avoid[s] subjective standards . . . or terms that depend on resolution of the merits . . .

5   ."  *Hernandez v. County of Monterey*, 305 F.R.D. 132, 152 (N.D. Cal. 2015) (citing *Lyon v. U.S.*

6   *Immigration & Customs Enforcement*, 300 F.R.D. 628, 635-36 (N.D. Cal. 2014) (citations and

7   internal quotation marks omitted)).

8           Here, there is an objective standard that can be used to determine class membership:

9   whether an employee was paid on a piece-rate basis.  If an employee was paid on such a basis, he

10  or she was subjected to defendants' allegedly unlawful method of tabulating the minimum wage

11  guarantee.  Even though individual class members may have suffered varying damages as a

12  result, they were still subjected to a potentially unlawful policy, and thus, they can be ascertained.

13  Moreover, as plaintiffs point out in their reply brief, classes similar to the proposed subclass have

14  previously been certified.  (Doc. No. 55, Plaintiffs' Reply in Support of Motion for Class

15  Certification at 4) (citing *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-cv-00705, 2012 WL

16  1232273, at *19 (E.D. Cal. Apr. 12, 2012)).  Therefore, this court finds that the minimum wage

17  subclass is ascertainable.

18                      *ii.  Numerosity*

19          In his declaration submitted in connection with this motion, plaintiffs' expert stated that

20  he estimated the subclass to consist of between 3,918 and 4,580 individuals.  (Peterson Decl. at ¶

21  10.)  This number clearly satisfies the numerosity requirement of Rule 23(a).

22  ───────────────

23  [11]  Plaintiffs' class definition, as currently written, is overbroad because it includes employees
    who were paid a pure hourly rate.  As plaintiffs state in their brief, "[w]hen the weekly amount of
    compensation for piece-rate work falls below the minimum wage, [Gerawan] include[s] a
24  'minimum wage assurance' on the employee's voucher."  (MCC at 18).  This minimum wage
    assurance is calculated on a weekly basis, which, according to the plaintiffs, is a violation of
25  California law because it is a form of wage-averaging that results in employees receiving less
    than the minimum wage for certain days.  (MCC at 18–19) (citing *Armenta v. Osmose, Inc.*, 135
26  Cal. App. 4th 314, 324 (2005)).  However, only piece-rate workers are susceptible to such wage-
    averaging.  Thus, because the contested policy applies only to piece-rate employees, the current
27  class definition, which includes all "hourly field workers," is overly broad.  At the hearing on the
    pending motion, plaintiffs agreed with this assessment of their proposed subclass definition.
28

                                        22

### iii.  Commonality

Plaintiffs have satisfied the commonality requirement by putting into evidence statements from defendants that the minimum wage guarantee, and the method whereby it was calculated, was a policy universally applied to all of defendants' piece-rate workers.  As noted above, company-wide policies present a common nucleus of both facts and law that satisfies the commonality requirement for class certification.  *See Ontiveros*, 2014 WL 3057506, at *6; *cf. Bishop v. Petro-Chemical Transport, LLC,* 582 F. Supp. 2d 1290, 1308 (E.D. Cal. 2008) (finding commonality not to be satisfied on the grounds that plaintiffs presented "no strong evidence of company wide policies").  Accordingly, commonality for plaintiffs' minimum-wage subclass is satisfied here.

### iv.  Typicality

Defendants also challenge plaintiffs' ability to satisfy the typicality requirement of Rule 23(a) with respect to the minimum wage subclass.  Defendants argue plaintiffs have not satisfied typicality because neither plaintiff Amaro nor plaintiff Urzua "submitted a declaration stating they worked a shift for which they did not receive the minimum wage." (Opp. at 14.)  The court finds this argument unconvincing.  As discussed above, plaintiffs have included both copies of plaintiff Urzua's pay stubs showing that he had received less than minimum wage on certain days of work as well as a declaration stating that attorney Kingsley and his associates have reviewed plaintiff Amaro's pay stubs and discovered several instances in which he too was paid less than minimum wage.[12]  Thus, both of the named plaintiffs have made a showing that they suffered the same type of harm as that experienced by the potential class members, and typicality is therefore satisfied.

/////

---

[12] The court's reliance on such evidence for the purpose of deciding class certification is not intended to suggest that a determination regarding the admissibility of any evidence has been made.  *See Parkinson v. Hyundai Motor Am.,* 258 F.R.D. 580, 599 (C.D. Cal. 2008); *see also Rollins v. Traylor Bros., Inc.*, 2016 WL 258523, at *3 (W.D. Wash. Jan. 21, 2016) ("Consequently, in adjudicating Plaintiffs' motion for class certification, the Court will consider all evidence offered by the parties, regardless of its admissibility at trial.") (and cases cited therein).

1

*v. Adequacy*

2

With respect to the adequacy requirement, defendants argue that plaintiffs are engaging in

3

impermissible claim-splitting.  (Opp. at 23.)  Claim-splitting can be analyzed through two lenses.

4

First, claim-splitting can involve an adequacy analysis, under which a class representative can be

5

deemed inadequate because he elects to pursue only select claims rather than all meaningful

6

claims, thus putting at risk the valid claims of absent class members.  *See In re Conseco*, 270

7

F.R.D. 521, 531 (N.D. Cal. 2010) ("Claim splitting is generally prohibited by the doctrine of res

8

judicata . . . . [and] class certification should be denied on the basis that class representatives are

9

inadequate when they opt to pursue certain claims on a class-wide basis while jeopardizing the

10

class members' ability to subsequently pursue other claims."); *see also Krueger v. Wyeth, Inc.*,

11

No. 03cv2496, 2008 WL 481956, at *2 (S.D. Cal. Feb. 19, 2008) (named plaintiff deemed an

12

inadequate class representative when she elected to pursue only statutory damages—as opposed

13

to statutory damages and damages from personal injuries—in a consumer class action).  Second,

14

some courts have analyzed claim-splitting as the equivalent of claim preclusion, holding that it

15

occurs when a class representative attempts to relitigate issues previously decided.  *See Rodriquez*

16

*v. Taco Bell Corp.*, No. 1:13-cv-01498, 2013 WL 5877788, at *3–4 (E.D. Cal. Oct. 30, 2013)

17

(holding that defendant failed to establish claim-splitting because the claims raised by the class

18

representative were "not identical to the claims that survived the class certification process" in

19

another class action).

20

Here, defendants' argument appears to be based upon the latter analysis.  Defendants

21

state that plaintiffs' minimum-wage claims are inextricably tied to their rest break claims because

22

it cannot be determined whether an employee did not receive the minimum wage without first

23

determining if that employee is owed compensation for rest breaks.  (Opp. at 16.)  In other words,

24

defendants suggest without citation to authority, if a class member was to succeed on the rest

25

break claim, it would ultimately change the amount of compensation he received, potentially

26

pushing him above the minimum wage threshold on certain days and knocking him out of this

27

subclass.  "Under the doctrine of claim preclusion, a final judgment forecloses 'successive

28

litigation of the very same claim, whether or not relitigation of the claim raises the same issues as

1  the earlier suit.'"  *Taylor v. Sturgill*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v.*

2  *Maine*, 532 U.S. 742, 748 (2001)).  However, defendants' claim splitting argument based upon a

3  suggestion of claim preclusion fails in this case because defendants have not pointed to any

4  previous final judgment that could preclude plaintiffs' claims.

5         A claim to be judged in the future is obviously not the equivalent of a claim already

6  judged.  Furthermore, the court is not persuaded that a finding for plaintiffs and potential class

7  members on the rest break issue would in fact undermine their minimum-wage claim.  In at least

8  one California case a plaintiff has recovered on both rest and meal break claims as well as on

9  minimum wage claims.  *See Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1250–51

10  (2008) (noting that plaintiff was awarded for both rest and meal break claims as well as minimum

11  wage claims).  Therefore, the court finds defendants' argument regarding claim-splitting to be

12  unpersuasive and adequacy to be satisfied here.

13                *d.   Rule 23(b)(3)*

14         Defendants argue this subclass cannot be certified under Rule 23(b)(3) because the court

15  will be required to review all hours worked for each individual employee in order to determine

16  which potential class members are entitled damages and to what amount.  (Opp. at 21.)  This

17  argument is unpersuasive.

18         The decision in *Tokoshima v. The Pep Boys—Manny Moe & Jack of California*, No. C-12-

19  4810-CRB, 2014 WL 1677979 (N.D. Cal. Apr. 28, 2014), is on point and supports certification of

20  the subclass here.  In *Tokoshima*, the plaintiff—a mechanic employed by Pep Boys—sued Pep

21  Boys alleging it used illegal methods to calculate wages for various positions.  *Id*. at *1.  For

22  example, Pep Boys used a base-rate plus piece-rate system to determine wages for mechanics.  *Id*.

23  The base rate was less than minimum wage, which meant that if a mechanic did not also earn a

24  piece-rate salary during an hour of a work, that employee would be paid less than the minimum

25  wage for that time.  *Id*. at 1-2.  Pep Boys argued that Rule 23(b)(3) could not be satisfied because

26  "determining liability require[ed] an individualized, hour by hour inquiry to identify specific

27  hours where minimum wage was not paid."  *Id*. at *7.  The court found this argument unavailing,

28  noting that the plaintiff's claim focused on the defendant's practice of "averaging" wages, a

1   practice prohibited under California law.  *Id*.  Further, the district court noted that the need to

2   determine damages on an individualized basis could not defeat certification under Rule 23(b)(3).

3   *Id*. at *8 (citing *Leyva*, 716 F.3d at 513).

4     Here, defendants have admitted to "averaging" wages when determining if a piece-rate

5   employee earned the minimum wage during a payroll period.  (Erevia Depo. at 21.)  Defendants

6   applied this methodology to all of their piece-rate employees.  Because of the universal nature of

7   this practice, the court finds that individual injury resulting from the alleged violation is capable

8   of proof at trial through evidence that is common to the class.  Any individual issues that do exist

9   go only to the issue of damages.  Thus, predominance is satisfied.

10     **V.**  **Former Employee Subclass**

11      *a.  Applicable Law*

12     California Labor Code § 201 states that "[i]f an employer discharges an employee, the

13   wages earned and unpaid at the time of discharge are due and payable immediately."  California

14   Labor Code § 203 provides that:

15      If an employer willfully fails to pay, without abatement or reduction
   in accordance with [§ 201], any wages of an employee who is
16      discharged or who quits, the wages of the employee shall continue
   as a penalty from the due date thereof at the same rate until paid or
17      until an action therefor is commenced; but the wages shall not
   continue for more than 30 days.

18

19   Employees who are discharged at the end of a season or the completion of a specific task are

20   covered by Labor Code § 203.  *Smith v. Superior Court*, 39 Cal. 4th 77, 93–94 (2006); *Doe v.*

21   *D.M. Camp & Sons*, No. CIV-F-05-1417 AWI SMS, 2009 WL 921442, at *12 (E.D. Cal. Mar.

22   31, 2009).

23      b.  *Evidence Submitted*

24     In support of their motion for class certification, plaintiffs have presented their own

25   declarations as well as deposition testimony from defendants' compliance manager, Jose Erevia.

26   In this regard, plaintiff Amaro states in his declaration as follows:

27      I was laid off at the end of the harvest season in approximately
   January 2012 . . . at the end of the harvest season approximately at
28      the end of January 2013 . . . at the end of the harvest season

1
2

> approximately in October 2013 . . . at the end of the harvest season again in December 2014 . . . and I was fired in April, 2015.

3   (Amaro Decl. at ¶¶ 4–8.)

4       Similarly, plaintiff Urzua has declared:

5
6
7

> I was laid off the stone fruit harvest season towards the beginning of October 2012 . . . I was laid off again around the first week of October 2013 . . . I was laid off the stone fruit harvest season towards the beginning of October 2013 . . . I was then laid off at the end of the grape harvest season around mid-November 2013.

8   (Urzua Decl. at ¶¶ 4–7.)  These declarations show that the named plaintiffs experienced routine

9   lay-offs as a result of the seasonal nature of their work.  Plaintiffs also point to the deposition of

10  Mr. Erevia in which he testified that crew laborers, such as plaintiffs, are hired on a seasonal

11  basis.  (Erevia Depo. at 11.)

12      c.   *Analysis*

13      i.   *Class Definition*

14      Defendants argue the former-employee subclass, as currently defined by plaintiffs, is

15  overbroad.  (Opp. at 22.)  The court agrees.  The subclass seeks to include all individuals who

16  were formerly employed by defendant as "field workers," but the term "field worker" is not

17  synonymous with "piece-rate employee."  (MCC at 23; Erevia Depo. at 15–16.)  Defendants

18  employed and discharged numerous hourly employees, and there is no indication that these

19  employees were deprived of wages as a result of defendants' rest break policy or the "averaging"

20  methodology used to calculate minimum wage guarantees.  Thus, if the subclass were certified as

21  currently defined by plaintiffs, it would presumably include a large number of individuals who

22  likely suffered no harm as a result of defendants' allegedly unlawful practices.  *See Mazur v.*

23  *eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (denying class certification because the

24  proposed definition included non-harmed individuals, rendering the proposed class "imprecise

25  and overbroad").

26      The court, however, is not without the authority to modify plaintiffs' proposed subclass

27  definition.  *See Bertulli*, 242 F.3d at 296; *see also Lundquist*, 993 F.2d at 14; *Mazur*, 257 F.R.D.

28  at 567 (citing *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 64 (D. Nev. 1985)).  If defendants, as

1  a result of their rest break or minimum wage policy, failed to pay all wages due to their

2  discharged employees, they also would likely have violated California's waiting-time provisions.

3  CAL. LAB. CODE §§ 201, 203.  Thus, because such a subclass would be derivative, it would also

4  be well-defined, making it ascertainable.  *See Pena*, 305 F.R.D. at 223 (certifying waiting time

5  subclass to the extent the waiting time claims derived from other wage and hour violations).

6  Here, having found that a rest-break subclass and minimum-wage subclass are both certifiable,

7  the court finds that a waiting time subclass is certifiable to the extent that it derives from these

8  other subclasses.  Also, because this waiting-time subclass is derivative, the court concludes that

9  the analysis of the Rule 23(a) and Rule 23(b)(3) factors applied to the rest-break and minimum

10  wage subclasses holds true for this subclass as well.

11  **VI.    Rule 23(g)**

12       Defendants challenge the appointment of attorney Martínez and his firm as class counsel.

13  Rule 23(g) requires that the court appoint class counsel and in doing so the court must consider

14  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii)

15  counsel's experience in handling class actions, other complex litigation, and the types of claims

16  asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

17  counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  In addition,

18  a court "may consider any other matter pertinent to counsel's ability to fairly and adequately

19  represent the interests of the class[.]"  Id. at 23(g)(1)(B).

20       Defendants claim that attorney Martínez's firm—Martínez Aguilasocho & Lynch,

21  APLC—must be excluded from consideration for appointment because of a conflict of interest

22  stemming from the firm's work as general counsel for the United Farm Workers.  According to

23  defendants, the United Farm Workers opposed the passage of California Assembly Bill 1513—

24  the legislation that resulted in the enactment of California Labor Code § 226.7—because the bill

25  included a safe harbor passage whereby employers could avoid civil liability by promptly paying

26  employees any back wages owed.  Defendants argue it would be in the interest of employees to

27  seek recoupment of wages owed through this safe harbor provision instead of through class action

28  /////

litigation such as this because such litigation results in the award of attorney's fees, thereby reducing the total amount recovered by class members.  (Opp. at 27.)

The court is not persuaded by this argument in opposition to the appointment of class counsel based upon an alleged conflict.  Ninth Circuit precedent places "upon the defendant the burden of proving a conflict of interest."  *Gutierrez v. Kovacevich "5" Farms*, No. CIV-F-04-5515, 2004 WL 3745224, at *8 (E.D. Cal. Dec. 2, 2004) (citing *Cummings v. Connell*, 316 F.3d 886 (9th Cir. 2003); *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997); and *Soc. Servs. Union, Local 535, Serv. Employees Int'l Union v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979)).  "Absent evidence of an actual conflict, it is appropriate to certify [a proposed] class." *Gutierrez*, 2004 WL 3745224, at *8.  Although defendants allege that a conflict of interest exists, defendants have failed to provide any evidence that such is the case.  Moreover, another judge of this court has previously found that a relationship with the United Farm Workers alone is an insufficient basis upon which to disqualify counsel from representing a class of agricultural workers.  *See id*. at *6 (finding that a conflict of interest did not exist between class counsel, who represented the United Farm Workers, and the class members, which included agricultural workers who had recently voted to not join the United Farm Workers).  If defendants can later muster concrete proof of a conflict of interest, they are free to file a motion for decertification at such time.  *Id*. at *8.  Until then, and based upon the evidence submitted in support of the pending motion, the court finds attorney Martínez and his firm to be adequate co-class counsel.

**VII.    Conclusion**

For all of the reasons set forth above:

1.  Plaintiffs' motion for class certification (Doc. No. 33) is granted;

2.  The following subclasses are certified:

a.  Piece-Rate Subclass I: All individuals who have been employed, or are currently employed, by defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 up to October 2013.

b.  Piece-Rate Subclass II: All individuals who have been employed, or are currently employed, by defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from October 2013 up to the present.

29

c. Minimum Wage Subclass: All individuals who have been employed, or are currently employed, by defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 to the present, whose compensation for any shift totaled less than the minimum wage.

d. Former Employee Subclass: All individuals who have been employed, or are currently employed, by Defendant Gerawan as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 to the present, who were laid off at the end of a season.

3. Kingsley & Kingsley and Martínez, Aguilasocho & Lynch, APLC are appointed as co-class counsel.

IT IS SO ORDERED.

Dated:   **May 19, 2016**                                                    

UNITED STATES DISTRICT JUDGE