ERIC B. KINGSLEY, Esq. (SBN 185123)
eric@kingsleykingsley.com
LIANE KATZENSTEIN LY, Esq. (SBN 259230)
liane@kingsleykingsley.com
**KINGSLEY & KINGSLEY, APC**
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
(818) 990-8300, Fax (818) 990-2903

Mario Martínez, Esq. (SBN 200721)
Email: mmartinez@farmworkerlaw.com
Edgar L. Aguilasocho, Esq. (SBN 285567)
Email: eaguilasocho@farmworkerlaw.com
**MARTÍNEZ AGUILASOCHO & LYNCH, APLC**
P.O. BOX 1998
Bakersfield, CA 93303
TEL: (661) 859-1174; FAX (661) 840-6154

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MARQUEZ AMARO, JESUS ALARCON URZUA, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>V.<br><br>GERAWAN FARMING, INC., A CALIFORNIA CORPORATION; GERAWAN FARMING PARTNERS, INC., A CALIFORNIA CORPORATION; DOES 1 - 10, INCLUSIVE,<br><br>DEFENDANTS. | Case No.: 1:14-cv-00147-DAD-SAB<br><br>[Assigned to Hon. Stanley A. Boone, Dept. 9]<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 15, 2019<br>Time: 10:00 a.m.<br>Crtrm.: 9<br>Judge: Hon. Stanley A. Boone<br><br>**[ACCOMPANYING DOCUMENTS: DECLARATION OF ERIC B. KINGSLEY; DECLARATION OF MARIO MARTÍNEZ; [PROPOSED] ORDER]** |

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on May 15, 2019, at 10:00 a.m., in Courtroom 9 of the above-entitled Court, Plaintiffs Rafael Marquez Amaro and Jesus Alarcon Urzua will, and hereby do, move this Court for an order granting preliminary approval of a

proposed class action settlement.  The terms of the settlement are contained within the Joint Stipulation of Class Action Settlement and Release filed herewith.  This motion is unopposed by Defendants.

This motion is based on this Notice and accompanying Memorandum of Points and Authorities, the Declaration of Eric B. Kingsley, the Declaration of Mario Martínez, the Joint Stipulation of Class Action Settlement and Release, Notice of Claim, and [Proposed] Order, all filed herewith, and on such further evidence and argument as may be presented at the hearing.

DATED:  April 11, 2019                    Respectfully submitted,
                                          KINGSLEY & KINGSLEY, APC


                                          By: /s/ ERIC B. KINGSLEY
                                               Eric B. Kingsley
                                               Liane Katzenstein Ly
                                               Attorneys for Plaintiffs
                                               and the Certified Class

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND ..................2

III.   SUMMARY OF SETTLEMENT TERMS .......................................5

    A.   The Certified Classes ...............................................................5

    B.   Maximum Settlement Fund.......................................................6

    C.   The Release By Plaintiff and Class Members.............................7

IV.    PRELIMINARY SETTLEMENT APPROVAL PROCESS ............8

    D.   Settlement Administration Timeline.........................................10

V.     PRELIMINARY  APPROVAL  OF  THE  SETTLEMENT  IS
      APPROPRIATE ........................................................................11

    A.   The Terms of the Proposed Settlement Provide Reasonable
        Compensation for Plaintiffs' and Class Members' Damages. ..............13

        1.   The Settlement Provides a Significant Monetary Benefit to
            Class Members..............................................................13

        2.   The Settlement's Financial Terms Reflect a Fair Discount
            From the Maximum Value of the Case Based on Litigation
            Risks............................................................................14

        3.   The Maximum Value of the Case Without Discount ................20

        4.   The Settlement Is the Product of Serious, Arm's-Length,
            Informed Negotiations and There Are No Indications Present
            to Doubt Its Fairness .....................................................21

VI.    THE PROPOSED CLASS NOTICE IS APPROPRIATE ..............22

    A.   The Class Notice Satisfies Due Process.................................22

    B.   The Proposed Notice Is Accurate and Informative ................23

VII.   PLAINTIFFS REQUEST A FINAL APPROVAL HEARING......................23

VIII.  THE COURT SHOULD APPOINT RUST CONSULTING, INC., AS
      CLAIMS ADMINISTRATOR.....................................................24

IX.    THE  COURT  SHOULD  APPROVE  PLAINTIFFS'  REQUESTED
      ENHANCEMENTS AT FINAL APPROVAL................................24

X.     CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

## FEDERAL CASES

*Acosta v. Trans Union LLC*,
 243 F.R.D. 377 (C.D. Cal. 2007) .................................................................11, 12

*Alberto v. GMRI, Inc.*,
 252 F.R.D. 652 (E.D. Cal. 2008) .........................................................................9

*Alvarado v. Nederend*,
 2011 WL 90228 (E.D. Cal. Jan. 11, 2011)..........................................................9

*Cardenas v. McLane FoodServices, Inc.*,
 796 F. Supp. 2d 1246 (C.D. Cal. 2011) .............................................................19

*Class Plaintiffs v. City of Seattle*,
 955 F. 2d 1268 (9th Cir. 1992)...........................................................................10

*Collins v. Cargill Meat Solutions Corp.*,
 2011 WL 837140 (E.D. Cal. Mar. 9, 2011) ..........................................................9

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977).............................................................................22

*Doe v. D.M. Camp & Sons*,
 No. CIV-F051417AWISMS, 2009 WL 921442 (E.D. Cal. Mar. 31, 2009)...........20

*Fowler Packing Company, Inc. v. Lanier*,
 (9th Cir. 2016) 844 F.3d 809 .............................................................................18

*Hanlon v. Chrysler Corp.*,
 150 F. 3d 1011 (9th Cir. 1998)..............................................................................9

*Harris v. Vector Marketing Corp.*,
 2011 WL 1627973 (N.D. Cal. April 29, 2011) ......................................................9

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981)...............................................................................13

*In re Prudential Securities, Inc.*,
 163 F.R.D. 200 (S.D.N.Y. 1995).........................................................................12

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008).......................................................................8

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................9

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980) .......................................................................11

*Low v. Trump University, LLC*,
   881 F.3d 1111 (9th Cir.2018).......................................................................6

*Martens v. Smith Barney*,
   181 F.R.D. 243 (S.D.N.Y. 1998)..........................................................22, 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................9

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982).......................................................................22

*Ontiveros v. Zamora*,
   2009 WL 425962 (E.D.Cal., 2009) .............................................................16

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................12

*Valenzuela v. Giumarra Vineyards Corp.*,
   614 F.Supp.2d 1089 (E.D.Cal. Feb. 20, 2009).....................................16, 20

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ......................................................................11

*Yamamoto v. Omiya*,
   564 F.2d 1319 (9th Cir. 1977) ....................................................................12

**STATE CASES**

*Armenta v. Osmose, Inc.*,
   135 Cal.App.4th 314 (2005).........................................................16, 18, 19

*Barnhill v. Robert Saunders & Co.*,
   (1981) 125 Cal.App.3d 1 ............................................................................20

iii

**NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Bluford v. Safeway Stores, Inc.*,
   216 Cal. App. 4th 864 (2013)............................................................................16, 18

*Gonzalez v. Downtown LA Motors, LP*,
   215 Cal.App.4th 36 (2013)...............................................................................17, 19

*Mamika v. Barca*,
   (1998) 68 Cal.App.4th 487.....................................................................................20

Smith v. Sup. Ct.,
   39 Cal.4th 77 (2006)...............................................................................................20

## STATE STATUTES

Bus. & Prof. Code § 17200...........................................................................................2

Cal. Labor Code § 226.7.............................................................................................16

Cal. Labor Code § 203...........................................................................................2, 20

Labor Code §§ 200, 203, 205.5, 218.5, 221, 226, 226.7, 1194, 1194.2, 1197,
   1198......................................................................................................................1, 8

## FEDERAL RULES

Fed. R. Civ. P. ("FRCP") 23(e) ...............................................................................8, 9

Fed. R. Civ. P. 23(c)(2), 23(e) ....................................................................................23

Federal Rule of Civil Procedure 23(f) .........................................................................4

## STATE REGULATIONS

8 CA ADC § 11000......................................................................................................15

8 CA ADC § 11140, para. 2.........................................................................................15

## OTHER AUTHORITIES

2 *Newberg* § 8.39.......................................................................................................23

2 *Newberg* §§ 8.21, 8.39............................................................................................23

4 *Newberg* § 11.25 ........................................................................................10, 11, 12

4 *Newberg* § 11.41 ............................................................................................11, 13

**NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

AB 1513 ...................................................................................................................17, 18

AB 513 ........................................................................................................................16

Assembly Bill 1513.....................................................................................................17

Manual for Complex Litigation (Third) § 30.41 (1995)..............................................9

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# I.    **INTRODUCTION**

Plaintiffs are pleased to report that they have reached a fair and reasonable agreement to settle this matter following the exchange of discovery, depositions of 30(b)(6) witnesses of the Defendants, certification of the classes, extensive motion practice, and arm's-length negotiations with the assistance of a skilled mediator. Plaintiffs, Rafael Marquez Amaro and Jesus Alarcon Urzua, on behalf of themselves and the certified Classes ("Plaintiffs"), seek preliminary approval of their proposed class action settlement they have reached with and Defendants Gerawan Farming, Inc.; Gerawan Farming Partners, Inc. ("Defendants" or "Gerawan") (Plaintiffs and Defendants are collectively referred to herein as the "Parties").

The settlement provides real and valuable relief to potentially thousands of Defendants' present and former employees.  Plaintiff brought this action against Defendants based on their alleged unlawful labor practices.  Plaintiffs contend that Gerawan violated Labor Code §§ 200, 203, 205.5, 218.5, 221, 226, 226.7, 1194, 1194.2, 1197, 1198 for (1) failure to pay regular wages, minimum wages, and overtime wages, (2) rest break violations, (3) unfair competition, and (4) failure to provide wages when due at termination/waiting time penalties.[1]

The Certified Classes include 6,417 field workers during the class period running from February 3, 2010 up to November 7, 2016. Declaration of Eric B. Kingsley, ¶ 8. (hereafter Kingsley Decl."); Joint Stipulation of Class Action Settlement and Release, ¶¶ 6 and 36, Exh A to Kingsley Decl. (hereafter "Joint Stipulation" or "Exh A.")

The Parties have agreed to settle this matter for a sum total of $5,000,000.00, without reversion or discount.  Joint Stipulation, ¶ 49.5.  The compromise provides that

---

[1] Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Action, disputes the damages and penalties claimed by Plaintiffs, and further contend that, for any purpose other than settlement, Plaintiffs' claims are not appropriate for class or representative action treatment. Defendants contend, among other things, that, at all times, they have complied with the California Labor Code, and the applicable Industrial Wage Commission Orders.

1

**NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Class Members will receive a pro rata payment from the Net Settlement Amount depending on how many weeks the Class Member worked during the Class period. Joint Stipulation, ¶ 49.1.a.

This proposed settlement resolves all of the Named Plaintiffs' and Class Members' claims against Defendants, and satisfies all of the criteria for preliminary settlement approval under federal law, and is fair, reasonable, and adequate. Accordingly, Plaintiffs request that the Court:

1.  Grant preliminary approval of the proposed Settlement;

2.  Approve the proposed notice program and the forms proposed by the Parties (collectively the "Settlement Documents");

3.  Confirm the appointment of Plaintiffs as Class Representatives;

4.  Confirm the appointment of Eric Kingsley and Liane Katzenstein of Kingsley & Kingsley, APC and Mario Martínez and Edgar Aguilasocho of Martínez Aguilasocho & Lynch, APLC as Settlement Class Counsel;

5.  Confirm the appointment of Rust Consulting, Inc. as settlement administrator;

6.  Set deadlines for mailing Settlement Documents, opting out of, or objecting to the settlement; and

7.  Schedule a final approval hearing.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On February 3, 2014, Plaintiffs filed a Class Action Complaint against Defendants alleging six causes of action: (1) Violation of Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"); (2) Failure to Pay Minimum Wages; (3) Failure to Pay Wages and Overtime; (4) Failure to Compensate Rest Breaks; (5) Penalties Pursuant to Lab. Code § 203; and (6) Violation of Bus. & Prof. Code § 17200. Joint Stipulation, ¶ 27; Dkt. 1.

On March 6, 2014, Defendants filed a Motion to Dismiss.  Joint Stipulation, ¶ 28; Dkt. 10.  On April 11, 2014, the Magistrate Judge issued a Findings and

NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Recommendations denying Defendants' Motion in its entirety.  Joint Stipulation, ¶ 28; Dkt. 16.

On May 19, 2014, the Court issued an Order adopting the Findings and Recommendations in full. On June 9, 2014, Defendants filed its Answer to the Complaint.  Joint Stipulation, ¶ 29; Dkt. 18.

After settling the pleadings, the Parties engaged in discovery.  Joint Stipulation, ¶ 30.   On October 21, 2014, Plaintiffs propounded their first set of special interrogatories and requests for productions of documents.  Joint Stipulation, ¶ 30.  The Parties then engaged in extensive meet and confer efforts and agreed to a representative sampling of documents from 300 class members resulting in the production of hundreds of thousands of documents.  Joint Stipulation, ¶ 30.

On October 21, 2015, Plaintiffs deposed Jose Erevia, Defendants' Compliance Manager.   Joint Stipulation, ¶ 31.   Plaintiffs' also deposed Michele Noland and Nicholas Boos regarding the organizational structure of Defendants, the identities of its officers, and the relationship between Gerawan Farming Inc. and Gerawan Farming Partners, Inc.  Joint Stipulation, ¶ 31.

On December 14, 2015, Plaintiffs filed their Motion for Class Certification. Joint Stipulation, ¶ 32; Dkt. 33.  Defendants opposed Plaintiffs' Motion on February 5, 2016.  Joint Stipulation, ¶ 32; Dkt. 51.  Plaintiffs filed their Reply Brief on February 23, 2016.   Joint Stipulation, ¶ 32; Dkt. 55.   On May 20, 2016, the Court granted Plaintiffs' Motion for Class Certification and certified four subclasses.   Joint Stipulation, ¶ 32; Dkt. 57.

On June 3, 2016, Defendants filed their Motion to Reconsider the Court's Order Granting Plaintiffs' Motion for Class Certification.  Joint Stipulation, ¶ 33; Dkt. 57. Plaintiffs filed their Opposition to Defendant's Motion on June 21, 2016.   Joint Stipulation, ¶ 33; Dkt. 60.  On June 28, 2016, Defendants filed their Reply Brief.  Joint Stipulation, ¶ 33; Dkt. 61.  On August 23, 2016, the Court denied Defendants' Motion for Reconsideration and instead ordered the Parties to provide Class Notice within 21

NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

days of the Order.  Joint Stipulation, ¶ 33; Dkt. 67.

On September 12, 2016, Defendants filed a Petition under Federal Rule of Civil Procedure 23(f), seeking permission from the Ninth Circuit to appeal the Court's class certification orders. Joint Stipulation, ¶ 34; Dkt. 70.  Then, on September 20, 2016, Defendants filed their Motion to Stay Pending Resolution of Defendant's Rule 23(f) Petition.  Joint Stipulation, ¶ 34; Dkt. 73.  Plaintiffs opposed Defendants' Motion to Stay on October 4, 2016.  Joint Stipulation, ¶ 34; Dkt. 74.  Defendants filed their Reply Brief on October 14, 2018.  Joint Stipulation, ¶ 34; Dkt. 75.  On November 14, 2016, the Court denied Defendants' Motion to Stay and instead ordered Defendants to provide the class list to Rust Consulting Company and mail out notice within twenty-one days.  Joint Stipulation, ¶ 34; Dkt. 78.  The Ninth Circuit denied Defendants' Rule 23(f) petition on November 16, 2016.  Joint Stipulation, ¶ 34.

On November 7, 2016, Rust Consulting mailed Notices to the Class Members, and after the expiration of the response period, Rust produced the certified Class List to both Parties which included 6,417 Class Members who did not opt out of the Class. Joint Stipulation, ¶ 35.

By May 2017, Defendants produced time and pay data for all 6,417 Class Members and Class Counsel provided this data to its expert for analysis.   Joint Stipulation, ¶ 36; Kingsley Decl. ¶ 9.   The discovery conducted in this case was extensive and fully permitted Class Counsel to determine the full value of the case and the risks associated with continued litigation.  Kingsley Decl. ¶ 10.

On November 29, 2018, the Parties attended private mediation with an experienced mediator, Francis J. "Tripper" Ortman III.  Joint Stipulation, ¶ 37.  The Parties reached an agreement in principle at the mediation and memorialized it in a Settlement Term Sheet.  Joint Stipulation, ¶ 37.

The issues in the Lawsuit would, if fully litigated, likely result in expensive and protracted litigation, appeals, and continued uncertainty as to the outcome.  Kingsley Decl., ¶ 4.  The Parties and their respective counsel have concluded that the settlement

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

provides an appropriate resolution of the Lawsuit and resolves all issues raised in the Lawsuit by the Parties, without prolonged litigation or the expense, risk and uncertainty involved in such litigation.  Kingsley Decl., ¶¶ 3, 4.

Named Plaintiffs and Class Counsel have concluded that the settlement is fair, reasonable, adequate, and in the best interests of the Classes.  Kingsley Decl., ¶ 3.  At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.  Kingsley Decl., ¶ 5.

Discussions between counsel for the Parties, extensive formal discovery, as well as the investigation and evaluation of the claims of Plaintiffs by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims.  The Parties agree that the above-described investigation and evaluation, as well as the information exchanged during settlement negotiations and mediation, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.  Kingsley Decl., ¶ 6.  Based on their own independent investigations and evaluations, Class Counsel is of the opinion that the consideration and terms of the Settlement as described herein, the extensive appellate risks involved in this case, the risk of loss on the merits, and the risk of a reduction in any damages sought or awarded, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class.  Kingsley Decl., ¶ 7.

## III.   SUMMARY OF SETTLEMENT TERMS

The significant terms of the Joint Stipulation and Class Action Settlement and Release are set forth below.

### A.   The Certified Classes

The Settlement Classes (which are identical to the Class certified by the Court and provided in the Notice sent to the Class Members after certification) are defined as:

///

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Piece-Rate Subclass I**: All individuals who have been employed, or are currently employed, by Defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 up to October 2013.

**Piece-Rate Subclass II**: All individuals who have been employed, or are currently employed, by Defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from October 2013 up to November 7, 2016.

**Minimum Wage Subclass**: All individuals who have been employed, or are currently employed by Defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 to November 7, 2016, whose compensation for any shift totaled less than the minimum wage.

**Former Employee Subclass**: All individuals who have been employed, or are currently employed, by Defendant Gerawan as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 to November 7, 2016, who were laid off at the end of a season.

Joint Stipulation, ¶ 26.

### B.   Maximum Settlement Fund

The total amount of the settlement shall be $5,000,000 (the "Maximum Settlement Fund"), without reversion or discount. The projected allocation of funds from the Maximum Settlement Fund is as follows:

| Category | Amount |
|---|---|
| Class Counsel Fees (1/3): | $ 1,500,000.00 |
| Class Counsels' Costs | $ 85,000.00 |
| Claims Administration Fees (Estimated): | $ 30,000.00 |
| Class Representative Enhancements: | $ 20,000.00 ($10,000 each) |
| Net Settlement Amount: | $ 3,365,000.00 |
| Gross Settlement Amount: | $ 5,000,000.00 |

Joint Stipulation, ¶ 49.5.

Given that this is a certified class action and the Class Members have already been given the opportunity to opt out, no second opportunity to opt out will be made available to them. *Low v. Trump University, LLC*, 881 F.3d 1111, 1121 (9th Cir.2018) (holding that in a class settlement that occurred after the class had been certified and after class members had been given an opportunity to opt out of the certified class, due

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  process did not compel a second opt out opportunity.)

2    To determine the amount of each individual settlement payment, the Claims

3  Administrator will calculate the total Compensable Work Weeks for all Settlement

4  Class Members by adding the number of Compensable Work Weeks worked by each

5  Settlement Class Member during the Class Period.  The Compensable Work Weeks for

6  each Settlement Class Member will be divided by the total Compensable Work Weeks

7  for all Settlement Class Members, resulting in the Payment Ratio for each Settlement

8  Class Member.   Each Settlement Class Member's Payment Ratio will then be

9  multiplied by the Net Settlement Amount to calculate each Settlement Class Member's

10  estimated Individual Settlement Payments.  Joint Stipulation, ¶ 49.1.a.

11    Any checks issued to Settlement Class Members shall remain valid and

12  negotiable for one hundred and eighty (180) calendar days from the date of their

13  issuance.  Joint Stipulation, ¶ 49.1.c.  After that date, any unclaimed funds shall be re-

14  distributed to Class Members who cashed their checks during the one hundred and

15  eighty (180) period.  Joint Stipulation, ¶ 49.1.c.

16    If there is not enough money in uncashed checks to cover the cost of the second

17  distribution or if there are still uncashed funds remaining after the expiration of the

18  checks in the second distribution, the money shall be allocated as cy pres and 50% of

19  the remaining funds shall be sent to Central Valley Farmworker Foundation (1120

20  Kensington St., Delano, CA 93215) and 50% of the remaining funds shall be sent to

21  California Rural Legal Assistance, Inc. (1430 Franklin St., Suite 103, Oakland, CA

22  94612).[2]  Joint Stipulation, ¶ 49.1.c.

23    **C.**  **The Release By Plaintiff and Class Members**

24    The release, to which all Class Members will be bound states that as of the

25  Effective Date, in exchange for the consideration set forth in this Agreement, Plaintiffs

26  

27  [2] The State of California Department of Industrial Relations Unclaimed Wage Fund no longer accepts
uncashed funds from class settlements.  Kingsley Decl., ¶ 13.  As such, a second distribution is meant

28  to ensure that the Class Members receive the highest benefit from this Settlement.  Kingsley Decl., ¶
14.

**NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

and the Settlement Class Members release the Released Parties from:

> any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, damages, attorney's fees, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that are alleged, related to or that reasonably could have arisen out of the same facts alleged in the Action, including, but not limited to, all claims related to the Migrant and Seasonal Agricultural Worker Protection Act. This Release shall include, without limitation, claims that were raised, or that reasonably could have been raised, under any applicable Wage Order (in effect during the Class Period and as subsequently amended) and California Labor Code provisions, including Labor Code §§ 200, 203, 205.5, 218.5, 221, 226, 226.7, 1194, 1194.2, 1197, 1198 based on alleged violations of these Labor Code provisions. The period of the Released Claims shall extend through the Preliminary Approval Date. The Released Claims do not cover any claims that have been alleged in the action *Rangel v. Gerawan Farming, Inc., Gerawan Farming Partners, Inc.* which is currently pending in the California Superior Court, County of Fresno as Case No. 16CECG02372. The Parties agree that the judgment, and release of claims provided herein, shall have *res judicata* effect. The definition of Released Claims shall not be limited in any way by the possibility that Plaintiffs or Class Members may discover new facts or legal theories or legal arguments not alleged in the operative pleadings in the Action but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims. Class Counsel also fully releases, indemnifies, and discharges Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, actions or causes of actions which arise from or relate to any dispute or claim between or among Class Counsel, including over any claim to any fees, costs, or expenses, and the Settlement shall constitute and may be pled by the Released Parties, as a complete and total defense to any such dispute or claim.

Joint Stipulation, ¶ 21. The Release is narrowly tailored to the claims pled.

## IV.   PRELIMINARY SETTLEMENT APPROVAL PROCESS

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. ("FRCP") 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Judicial proceedings under the Federal Rules of Civil Procedure have led to a

8

defined procedure and criteria for settlement approval in class actions that are thoroughly described in the Manual for Complex Litigation (Fourth) ("*Manual (Fourth)*") § 21.62 (2004).  Federal Rule of Civil Procedure 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995)).

> [T]he Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See Alvarado v. Nederend*, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008); *Collins v. Cargill Meat Solutions Corp*., 2011 WL 837140, at *6 (E.D. Cal. Mar. 9, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys. . . ."). Closer scrutiny is reserved for the final approval hearing.

*Harris v. Vector Marketing Corp.*, 2011 WL 1627973, *7 (N.D. Cal. April 29, 2011); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage

NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

of the proceedings," and "the amount offered in settlement").  This procedure for preliminary approval of settlement agreements, endorsed by the leading class action commentator, Professor Newberg, and commonly used by Federal courts, safeguards class members' procedural due process rights and enables a court to fulfill its role as the "guardian" of the class.  *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.22 (4th ed. 2002).

The approval or rejection of the proposed settlement is committed to the Court's sound discretion.  *See Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992) (in the context of a class action settlement, an appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon a strong showing of abuse of discretion).

The Court's preliminary evaluation of the proposed settlement purports to determine whether it is within the permissible "range of reasonableness" and thus, whether the notice to the class is appropriate.  4 *Newberg* § 11.25-26; Manual for Complex Litigation (Third) ("*Manual* (Third)") § 30.41 (1995).

### D.  Settlement Administration Timeline

The following schedule sets forth a proposed sequence for the relevant dates and deadlines embodied in the Settlement, conditioned upon this Court granting preliminary approval of the proposed Settlement.  This is outlined in the Proposed Order filed herewith.

| | |
|---|---|
| Deadline to provide Class Data to the Settlement Administrator. | Within ten (10) calendar days after Preliminary Approval. |
| Deadline for Settlement Administrator to mail Notice of Class Action Settlement to all Class Members via regular first-class U.S. Mail. | Within fourteen (14) calendar days after receiving the Class Data, the Settlement Administrator will mail Notice of Class Action Settlement. |

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

| | |
|---|---|
| Deadline to submit disputes to workweek information provided on the Notice of Class Action Settlement. | No later than sixty (60) calendar days after the mailing of the Notices of Class Action Settlement. |
| Deadline for Objections. | Objections must be submitted by the Response Deadline, sixty (60) days after Notice of Class Action Settlement is mailed by the Settlement Administrator. |
| Deadline for Plaintiff to file motion for final approval of settlement and application for attorneys' fees and costs, and class representative's enhancement payment. | TBD by Court |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs and class representative's service payment. | TBD by the Court, but not earlier than thirty (30) days after the Response Deadline. |

## V. <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation.  *See* 4 *Newberg* § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Preliminary evaluation of class action settlements is intended to determine only whether the proposed settlement is within the range of possible approval or whether it is potentially fair, as the Court will make a final determination on adequacy at the final approval hearing.  *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); 4 *Newberg* § 11.25.

**11**

The Court has broad powers to determine whether a proposed settlement is fair under the circumstances of the case, *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Acosta*, 243 F.R.D. at 384 (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)), and preliminary approval of a settlement agreement should be granted unless there are reasons to doubt its fairness or there are other "obvious deficiencies" in the proposed settlement making it clear it would not ultimately weather a final approval hearing. *See In re Prudential Securities, Inc.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To make this fairness determination, courts consider several relevant factors, including the strength of the plaintiff's case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, as well as the experience and views of counsel. *Torrisi*, 8 F.3d at 1375. This list of factors is not exclusive, however, and the court may balance and weigh factors differently depending on the factual circumstances of each case. *See Id.* at 1376.

The *Manual* summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval**,** the court should direct that notice . . . be given to the Class Members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual* (Third) § 30.41; *see also* 4 *Newberg* § 11.25.

When examining settlement agreements, a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.  4 *Newberg* § 11.41.

Here, the proposed Settlement falls well within the range of reasonableness as the terms of the agreement are fair and adequate and provide a good result for Plaintiff and Class Members, especially considering the complexities of the case, the risks of not prevailing on the merits at trial, and the complex appellate issues at play in this case. Kingsley Decl., ¶ 15.  Further, Plaintiff has engaged in an exchange of discovery taken and defended, depositions, as well as conducted extensive research into the applicable areas of law.   Kingsley Decl., ¶¶ 8-11.   The Parties have conducted informed, good faith, arms-length negotiations, after multiple rounds of dispositive motions, with adequate access to necessary information, and did so with the assistance of a highly regarded and experienced mediator.  Kingsley Decl., ¶ 16.

Both sets of Plaintiffs' counsel and Defendants' counsel are experienced in class action matters and are capable of assessing the strengths and weaknesses of claims and the benefits of the proposed Settlement under the circumstances of the case and in the context of a private, consensual agreement.  Martínez Decl., ¶¶ 8-13, Kingsley Decl., ¶¶ 63-64.   Plaintiffs' counsel believes the Settlement offers a fair result to Class Members, commensurate with the risks of further litigation.  Accordingly, preliminary approval of the Settlement is appropriate.  Martínez, ¶ 3, Kingsley Decl., ¶ 3.

## A.    The Terms of the Proposed Settlement Provide Reasonable Compensation for Plaintiffs' and Class Members' Damages.

Ultimately, a settlement should stand or fall on the adequacy of its terms.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).   The Settlement reflects an excellent compromise.

### 1.    The Settlement Provides a Significant Monetary Benefit to Class Members

During the applicable statutory period, February 3, 2010 up to November 7,

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2016, Defendants employed 6,147 employees in California who did not opt out of the certified Class Action.  As such, relying on the expert analysis of the employment data, Plaintiffs allege that the class is entitled to approximately $16,458,758.00 (with approximately $14,084,739 of that amount in waiting time penalties), plus attorneys' fees and costs.  Kingsley Decl., ¶ 17. The Parties have agreed to settle this matter for a sum total of $5,000,000.00, without reversion or discount.  Joint Stipulation, ¶ 40.

Each Class Member's individual settlement payment is based on a formula calculating the total number of Workweeks performed by the employee to ascertain the percentage of the settlement fund to which that employee is entitled.  Joint Stipulation, ¶ 49.1.

Defendant has agreed to pay Plaintiffs' counsel Court awarded attorneys' fees of $1,500,000.00, thirty percent of the total settlement fund and $85,000.00 in out of pocket costs, without opposition.  Joint Stipulation, ¶ 49.3.

Further, Defendant has agreed to pay the named Plaintiffs an enhancement award, not to exceed $10,000 each, without opposition.  Joint Stipulation, ¶ 49.2.

Finally, Defendant has agreed to pay all costs necessary to administer the settlement as detailed in the Settlement Agreement, estimated to be $30,000.00.  Joint Stipulation, ¶ 49.4.

All of these payments shall be made from the Maximum Settlement Fund of $5,000,000.  Joint Stipulation, ¶ 49.5.

## 2. The Settlement's Financial Terms Reflect a Fair Discount From the Maximum Value of the Case Based on Litigation Risks

A discount on the maximum value of the case is warranted in light of the significant risks going forward.  Moreover, the settlement will be fully paid in cash, without reversion or discount, and does not require the Class Members to "make a claim" or take any action to receive their share.  Kingsley Decl., ¶ 18.

Class Counsel factored in several risks when discounting this case for settlement

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   purposes.

2      Recovery on the merits on a class-wide basis is not guaranteed here.

3   Defendants' defenses to liability are an important basis for validating the

4   reasonableness of the settlement amount.  Defendants have consistently maintained

5   that they have ample legal and factual grounds for defending this action.  In addition

6   to arguing that the Class Members were properly paid the minimum and overtime

7   wages owed to them, Defendant has a unique argument regarding the rest period claim.

8      **a.**   **The Risks Associated With the Rest Period Claim**

9      The rest period claim in this case is based on Defendants' use of a piece rate

10  system to compensate the Class Members for their work in the field.  Kingsley Decl.,

11  ¶ 19.

12     Compensation on a "'Piece rate basis' is a method of payment based on units of

13  production or a fraction thereof." 8 CA ADC § 11140, para. 2.(L).  Gerawan utilized

14  two piece-rate methods. A strict method whereby employees are only paid per unit of

15  production.  Kingsley Decl., ¶ 20. The second is a "modified" piece-rate that combines

16  a piece-rate with an hourly rate. Kingsley Decl., ¶ 21.

17     Under California law, workers are entitled to receive paid rest breaks. Wage

18  Order 14 provides in pertinent part the following with regards to California's rest

19  period requirement:

20     Every employer shall authorize and permit all employees to take rest
       periods . . . Authorized *rest period time shall be counted, as hours*
21     *worked for which there shall be no deduction from wages*."

22  8 CA ADC § 11140, para. 12 (emphasis added). This same Wage Order defines "Hours

23  Worked" as "the time during which an employee is subject to the control of an

24  employer and includes all the time the employee is suffered or permitted to work,

25  whether or not required to do so." *Id.*, para. 2.(G). "Hours Worked," in turn, must be

26  compensated at the employees' regular rate and in no case less than the minimum wage.

27  8 CA ADC § 11000 (Order Regulating the Minimum Wage), para. 2.

28     It follows that under a piece-rate system, since employees are paid for units

15

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

produced, unless they are separately compensated at an hourly rate of no less than the minimum wage for the time they spend taking rest breaks, any rest break they take is unpaid or underpaid. *See Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (2013) (Under California law, "rest periods must be separately compensated in a piece-rate system. Rest periods are considered hours worked and must be compensated."); *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 316-18 (2005) (holding that where a piece-rate method of compensation is used, the employer is required to pay at least the minimum wage for each hour worked); *Ontiveros v. Zamora*, 2009 WL 425962, 3-5 (E.D.Cal., 2009) (plaintiffs properly alleged that strict piece-rate failed to properly compensate for state-mandated rest breaks). In other words, unless the employer provides hourly compensation of no less than the minimum wage for every 10-minute rest period taken by the employee, the employer is providing no compensation whatsoever during rest periods. *Id.*[3] An employer that fails to provide a rest period "in accordance with an applicable order of the Industrial Welfare Commission . . . shall pay the employee one additional hour of pay . . . ." Cal. Labor Code § 226.7. This Court has held that grape workers may seek recovery of additional wages for missed rest periods in a private suit such as this one. *Valenzuela v. Giumarra Vineyards Corp.*, 614 F.Supp.2d 1089, 1101 (E.D.Cal. Feb. 20, 2009). Plaintiffs are alleging that  Gerewan's piece-rate schemes are unlawful and result in unpaid rest periods.

Defendants maintain a universal rest period policy for all fieldworkers.  Kingsley Decl., ¶ 22. In addition to providing field workers with a copy of the written rest period

---

[3] *Bluford* suggests that rest periods must be paid at the average hourly rate, not just at minimum wage. See *Bluford, supra*, 216 Cal. 4th at 872 ("Under the California minimum wage law, employees must be compensated for each hour worked at either the legal minimum wage or the contractual hourly rate . . .").  On November 1, 2013, the California Labor Commissioner, Julie Su, issued to DLSE staff a Memorandum entitled *The Minimum Wage and Rest Period Obligations of Employers in the Context of Piece Rate Employment* in which she stated the state's interpretation of Section 12 (Rest Periods) of all IWC wage orders to be that "the hourly rate payable to piece-rate employees during rest periods is the hourly piece-rate wage calculated by dividing the total weekly piece-rate earnings by the total hours of piece-rate work performed in the week."  New state law through AB 513, discussed *infra*, confirms the labor commissioner's interpretation; Cal. Dept. Industrial Relations, DLSE, Julie A. Su, Memorandum, The Minimum Wage and Rest Period Obligations of Employers in the Context of Piece Rate Employment (Nov. 1, 2013).

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

policy, Defendants also orally advise all field workers of their rights to receive rest periods and provide daily written reminders to take rest periods, including scheduling rest periods. Kingsley Decl., ¶ 23. Defendants produced four-hundred and fifty-one (451) declarations from field workers who attested to taking rest periods while performing piece-rate work in accordance with the rest period policy. Kingsley Decl., ¶ 24.

As with its uniform rest period policy, Defendants also utilize a universal compensation system that compensates field workers on an hourly basis, on an hourly basis plus a modest piece-rate, or on a pure piece-rate basis depending upon the type of work performed. Kingsley Decl., ¶ 25. As part of its universal compensation system, Defendants pay all field workers the same daily piece-rate for picking and packing grapes. Kingsley Decl., ¶ 26. Defendants' records indicate how much each Class Member was paid for piece on a given day. From February 1, 2010, Defendants did not provide any compensation to field workers for rest periods. As such, Defendants' policies resulted in Piece-Rate Subclass Members taking their breaks "unpaid" in violation of the law. Kingsley Decl., ¶ 27.

On March 5, 2015, the Assembly Committee on Insurance introduced Assembly Bill 1513 ("AB 1513"), which originally dealt with issues related to studies performed by the Commission on Health Safety and Workers' Compensation. On March 26, 2015, the California Assembly amended the bill, codifying the courts' rulings in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36 (2013) and *Bluford* that nonproductive time, rest breaks, and recovery breaks must be separately compensated. The March 26, 2015 version of AB 1513 and subsequent drafts provided an affirmative defense to employers who failed to timely compensate employees separately for rest periods from July 1, 2012 to December 31, 2015. However, the Legislature specifically prohibited employers from asserting this affirmative defense against "[c]laims asserted in a court filing prior to March 1, 2014 or claims asserted prior to March 1, 2014 and amended prior to July 1, 2015." On September 9, 2015 the California Senate passed

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the September 9, 2015 version of AB 1513, which was enrolled without changes on September 16, 2015. On October 10, 2015 Governor Jerry Brown approved AB 1513. Plaintiffs filed their Class Action Complaint against Defendants on February 3, 2014.

Defendants maintain that AB 1513 is unconstitutional.  Kingsley Decl., ¶ 32. Specifically, in *Fowler Packing Company, Inc. v. Lanier, et al*, Case No. 1:16-cv-001060-DAD-SAB, filed on January 22, 2016, employers brought action against California state officials, alleging that "carve-outs" in safe harbor provision of piece-rate wage law, which precluded employers from using the provision as an affirmative defense against wage and hour claims violated the Bill of Attainder Clause and Equal Protection Clause of the United States and California Constitutions.  Kingsley Decl., ¶ 33.  The Ninth Circuit held that the district court improperly dismissed the employers Equal Protection Claim but correctly dismissed the Bill of Attainder claim.  Kingsley Decl., ¶ 34.   The action was remanded for further proceedings. *Fowler Packing Company, Inc. v. Lanier* (9th Cir. 2016) 844 F.3d 809, 819.)  Kingsley Decl., ¶ 35.  On August 27, 2018, this Court stayed this action until November 27, 2018 due to the pending Motion in the *Fowler* matter.  Kingsley Decl., ¶ 36.

The *Fowler* case presents complicated appellate issues, and if Defendants succeed in challenging AB 1513, this could pose significant challenges for Plaintiffs. Kingsley Decl., ¶ 37.  This unique appellate issue also ensures that any judgment in this case would result in lengthy, costly, and time-consuming appeals.  Kingsley Decl., ¶ 38.

### b.   The Risks Associated With the Minimum Wage Claim

"Under California's minimum wage law, employees must be compensated for each hour worked at either the legal minimum f or the contractual hourly rate, and compliance cannot be determined by averaging hourly compensation." *Bluford*, 216 Cal. App. 4th at 872; *Armenta v. Osmose, Inc*., 135 Cal.App.4th 314, 324 (2005 ("While the averaging method utilized by the federal courts to assess whether a

**18**

minimum wage violation has occurred may be appropriate when considered in light of federal public policy, it does not advance the policies underlying California's minimum wage law and regulations.") (emphasis added); see also *Cardenas v. McLane FoodServices, Inc.,* 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011)(finding that the federal averaging method did not apply to the payment of piece-rate wages under California law). This was reiterated again recently in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36 (2013) where the Court concluded that "[a]veraging piece-rate wages over total hours worked results in underpayment of employee wages" Id. at 50.

Plaintiffs allege that Gerawan's pay policies failed to compensate employees when they earned minimum wages on a weekly basis but failed to earn minimum wage on a specific day. Kingsley Decl., ¶ 39. Specifically, Plaintiffs allege that Defendants calculate the minimum wages owed to employees on a weekly, rather than daily basis. Kingsley Decl., ¶ 40. When the weekly amount of compensation for piece-rate work falls below the minimum wage, Defendants include a "minimum wage assurance" on the employee's voucher. Kingsley Decl., ¶ 41. However, as a result of performing this calculation on a weekly basis, Defendants failed to pay field workers minimum wages when their aggregate wages for the week exceeded the minimum wage, but their daily wages fell below the minimum. Kingsley Decl., ¶ 42. Plaintiffs alleged that this weekly averaging violates California law, which requires that minimum wages be paid for each hour worked in a day. *See Armenta*, *supra*, 135 Cal. App. 4th at 324 ("the FLSA model of averaging all hours worked "in any work week" to compute an employer's minimum wage obligation under California law is inappropriate. The minimum wage standard applies to each hour worked by [employees] for which they were not paid.").

Defendants argued that they averaged hours to ensure that employees received Gerawan's base rate, which was higher than minimum wage, which resulted in instances of overpayment. As a result, any alleged underpayments would be offset by

**19**

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the overpayments.  Kingsley Decl., ¶ 43.

            **c.**      **The Risks Associated With the Claim for Waiting Time Penalties**

Labor Code § 203 provides "if an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty. . ." for up to 30 days. Lab. Code § 203; *Mamika v. Barca*, (1998) 68 Cal.App.4th 487, 492. In prior grape harvesting cases considered by this Court, the Court has routinely found employees discharged from seasonal agricultural work are entitled to waiting time penalties.   *Doe v. D.M. Camp & Sons*, No. CIV-F051417AWISMS, 2009 WL 921442, at *12 (E.D. Cal. Mar. 31, 2009)(citing Smith v. Sup. Ct., 39 Cal.4th 77, 86 (2006)); *Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1103 (E.D. Cal. 2009). This comports with the public policy that favors the full and prompt payment of earned wages. *See, e.g.*, *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 7; *Mamika, supra* 68 Cal.App.4th at 492.  If successful on the underlying claims, Plaintiffs and the Former Employee Subclass are entitled to waiting time penalties as a result of Defendants' failure to pay minimum wages or compensate field workers separately for rest periods. Kingsley Decl., ¶ 44.

The Parties disagreed considerably as to the value of this claim.  Kingsley Decl., ¶ 45.  Plaintiffs argued that because Defendants lay-off the field workers at the end of harvest, many of the Class Members are entitled to multiple waiting time penalties. Kingsley Decl., ¶ 46.  Defendants argued that the Class Members are only entitled to one waiting time penalty, the amount of waiting time penalties sought would be unconstitutionally excessive, there is a good faith dispute over whether rest break payments were owed, and that rest break premiums cannot support a claim for waiting time penalties.  Kingsley Decl., ¶ 47.

        **3.**    **The Maximum Value of the Case Without Discount**

Defendant produced class data for all 6,417 Class Members, and Class Counsel had this data analyzed by its expert (the same expert who supplied a report during the

class certification briefing).  Kingsley Decl., ¶ 9.  As such, relying on the expert analysis of the employment data, Plaintiffs allege that the class is entitled to approximately $16,458,758.00 (with approximately $14,084,739 of that amount in waiting time penalties), plus attorneys' fees and costs.  Kingsley Decl., ¶ 17.

This figure is based on the shift analysis for 6,417 Class Members.  Kingsley Decl., ¶ 49.  The expert determined that 5,044 Class Members were owed minimum wage payments during the Class Period for 41,267 shifts.  Kingsley Decl., ¶ 50.  The expert valued the wage claim at $504,832.00.  The expert determined that there were 5,442 Class Members who worked a piece rate shift with a rest period violation on 159,276 shifts.  Kingsley Decl., ¶ 51.  The expert valued the rest period penalty claim at $1,869,187.00.  Kingsley Decl., ¶ 52.  Finally, the expert determined that 5,846 Class Members were "former employees" for the purpose of waiting time penalties. Kingsley Decl., ¶ 53.  If these Class Members were entitled to only one waiting time penalty each, the expert valued the waiting time penalty claim at $14,084,739.[4] Kingsley Decl., ¶ 54.

Class Counsel determined that the full value of the case, without including waiting time penalties was $2,374,019.00.  Kingsley Decl., ¶ 57.  As such, Class Counsel felt that the settlement amount of $5,000,000.00 was fair in light of the risks outlined above.  Kingsley Decl., ¶ 58.  It includes a portion of waiting time penalties and all of the underlying minimum wages and rest period penalties available to the Class Members.  Kingsley Decl., ¶ 59.

**4.** **The Settlement Is the Product of Serious, Arm's-Length, Informed Negotiations and There Are No Indications Present to Doubt Its Fairness**

The Parties engaged in arm's-length, informed negotiations during the course of

---

[4] Of those 5,846 employees, 2,665 of them were eligible for more than one waiting time penalty. Kingsley Decl., ¶ 55.  If the Court were to determine that the Class Members can lawfully receive multiple waiting time penalties, there is an additional $11,965,955.00 in waiting time penalties. Kingsley Decl., ¶ 56.

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

this litigation in order to reach the proposed Settlement.  Kingsley Decl., ¶ 5.

The judgment of experienced counsel is an important factor in a court's determination that negotiations were fair and informed.  Absent fraud and collusion, the court may not only *rely* upon the judgment of experienced counsel, but should be hesitant to "substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, the involvement of an objective, third-party neutral tends to demonstrate the presence of arm's-length negotiations.  *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998). Class counsel has a great deal of experience litigating and evaluating class action cases. Martínez Decl., ¶¶ 8-13, Kingsley Decl., ¶¶ 63-64.

Class Counsel have conducted significant investigation and discovery into the facts of this class action case.  Several rounds of written discovery were conducted, Defendants produced thousands of documents and information and had their 30(b)(6) witnesses deposed.  Kingsley Decl., ¶¶ 8-10.  Class Counsel retained an expert who analyzed the class data for each and every Class Member, all of which were reviewed, considered and analyzed in advance of settlement negotiations.  Kingsley Decl., ¶ 48. The settlement negotiations were guided by Tripper Ortman, a preeminent mediator in the field over the course of a long day of mediation.

Based on this investigation and evaluation, Plaintiffs' counsel firmly believes the Settlement, on the terms set forth in the Joint Stipulation, is fair, reasonable, adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and numerous potential appellate issues.  Preliminary approval of the Joint Stipulation of Class Action Settlement and Release is appropriate.  Kingsley Decl., ¶ 3.

## VI.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A.   The Class Notice Satisfies Due Process

The Notice apprises all Class Members of the litigation and their options under

1   the Settlement.   Kingsley Decl., ¶ 61, Ex. "B".   This proposed notice meets the

2   standards set forth in Rule 23(c)(2)(B) for classes certified under Rule 23(b)(3).   The

3   notice is being provided directly to the class members based on the certified class list

4   to be provided by Defendants.   Joint Stipulation, ¶ 48.1.

5   **B.**   **The Proposed Notice Is Accurate and Informative**

6   The proposed notice provides information on the meaning and nature of the

7   proposed settlement and Settlement Class, the terms and provisions of the Settlement,

8   the relief the Settlement will provide Settlement Class Members, the amount of the

9   proposed enhancement payments to Named Plaintiffs, the amount of attorneys' fees

10   and costs that Class Counsel may request, and the date, time and place of the final

11   approval hearing.   The notice clearly and accurately describes the nature of the action,

12   the definition of the Settlement Classes, and the class claims.   Kingsley Decl., ¶ 61,

13   Ex. "B".   The notice also informs class members that they may enter an appearance

14   through counsel if they so desire and explains the binding nature of class judgment

15   under Rule 23(c)(3).   *Id.*   The notice also provides class members with an opportunity

16   to file objections to the settlement as required by Rule 23(e)(4)(A).   *Id.*

17   Further, the notice fulfills the requirement of neutrality in class notice.   *See* 2

18   *Newberg* § 8.39.   It summarizes the proceedings to date, Plaintiffs' allegations, and the

19   terms and conditions of the Settlement, in an informative and coherent manner, in

20   compliance with the *Manual's* statement that "the notice should be accurate, objective,

21   and understandable to Class Members. . . ."   *Manual* (Third) at § 30.211.   The notice

22   clearly states that the Settlement does not constitute an admission of liability by

23   Defendants, and recognizes that the Court has not ruled on the merits of the action.   It

24   also states that the final Settlement approval decision has yet to be made.   Accordingly,

25   the notice complies with the standards of fairness, completeness and neutrality required

26   of a settlement class notice disseminated under authority of the Court. *See* Fed. R. Civ.

27   P. 23(c)(2), 23(e); 2 *Newberg* §§ 8.21, 8.39; *Manual* (Third) §§ 30.211, 30.212.

28   **VII.   PLAINTIFFS REQUEST A FINAL APPROVAL HEARING**

The last step in the settlement approval process is the formal hearing, at which the Court may hear all evidence and argument necessary to evaluate the Settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The parties recommend that the hearing be held approximately 120 days after preliminary approval by the Court, and at least 30 days after the response deadline which would give the Parties sufficient time to complete the administration process and the notice program.  Before the notice period begins, Plaintiffs will brief and file their application for an award of attorneys' fees and costs, and for the Plaintiffs' enhancements.

## VIII. THE COURT SHOULD APPOINT RUST CONSULTING, INC., AS CLAIMS ADMINISTRATOR

The Parties have agreed upon and propose that the Court appoint Rust Consulting to serve as the Settlement Administrator.  Rust is very experienced in administering wage and hour class action settlements and has estimated fees and costs for Settlement Administration to be $30,000.00.  Kingsley Decl., ¶ 62, Exh. "C" (bid from Rust).

## IX. THE COURT SHOULD APPROVE PLAINTIFFS' REQUESTED ENHANCEMENTS AT FINAL APPROVAL

The requested enhancement awards take into account Mr. Amaro's and Mr. Urzua's time, effort, and expense incurred in coming forward to litigate this case on behalf of all Class Members. Kingsley Decl., ¶ 65.  Plaintiffs involvement has been an invaluable resource throughout this litigation.  Kingsley Decl., ¶ 66.  The Settlement Agreement provides for $10,000.00 to be allocated to the Named Plaintiffs to compensate them for their role in bringing this suit and thereby enforcing an important interest on behalf of the Class.  Kingsley Decl., ¶ 67.

Plaintiffs expended significant time and efforts to assist with this matter.

24

Kingsley Decl., ¶ 68.  The time spent by Plaintiffs includes providing information to Class Counsel regarding the nature of their claims, consulting with Class Counsel on multiple telephone calls, regularly discussing the status of their case with counsel by telephone and e-mail, and providing information to other Class Members regarding the status of the certified class action.  Kingsley Decl., ¶ 68.

Class Counsel considers an enhancement of $10,000.00 to be a fair and reasonable enhancement.   Kingsley Decl., ¶ 69.   The enhancement takes into consideration the time, effort, and expense incurred by Plaintiffs in coming forward to litigate this matter on behalf of all Class Members.  Kingsley Decl., ¶ 69.  Additionally, the request considers the risk that the Representative Plaintiffs undertook for paying Defendants' legal fees and costs in the event that Defendants prevailed at trial. Kingsley Decl., ¶ 69.

The Representative Plaintiffs also risked the possibility that other employers in the industry and in the small community could refuse to hire them given their decision to file a class action lawsuit.  None of the other Class Members faced these risks. Kingsley Decl., ¶ 70.  Both Plaintiffs will provide detailed declarations supporting their requested enhancements at Final Approval.

## X.    CONCLUSION

The Settlement is fair and reasonable and all of the requirements for preliminary approval are met.  The Court is therefore requested to grant this motion and enter an order in the form submitted concurrently herewith.

DATED:  April 11, 2019                    KINGSLEY & KINGSLEY, APC


                                    By: /S/ ERIC B. KINGSLEY
                                        Eric B. Kingsley
                                        Liane Katzenstein Ly
                                        Attorneys for Plaintiffs
                                        and all others similarly situated

25