UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MARQUEZ AMARO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GERAWAN FARMING, INC, et al., <br><br> Defendants. | No. 1:14-cv-00147-DAD-SAB <br><br> AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT <br><br> (Doc. No. 107) |

This matter came before the court on June 4, 2019, for hearing on plaintiffs Rafael Marquez Amaro and Jesus Alarcon Urzua's ("plaintiffs") motion for preliminary approval of a class action settlement. (Doc. No. 107.) Attorney Liane Katzenstein Ly appeared telephonically on behalf of plaintiffs. Attorneys Ronald Barsamian and Bradley Hamburger appeared on behalf of defendants. For the reasons set forth below, plaintiffs' motion will be granted.

## BACKGROUND

Plaintiffs are former employees who worked as field workers for defendants. (Doc. No. 34-22 at ¶ 3; Doc. No. 34-23 at ¶ 3.) Defendants grow and harvest grapes, oranges, and various stone fruits in California. (Doc. No. 33, Motion for Class Certification ("MCC") at 3–4.) Defendants employ seasonal workers such as plaintiffs—who are fired at the end of each harvest and are subsequently rehired for the next harvest—to assist with "preparing trees and vines" and with harvesting fruit. (*Id*. at 1, 4–5; Doc. No. 34-24, Gerawan's Human Resource Employee

1

Manual ("Employee Manual") at 3–4.)

Tree and vine preparation take place during the pre-harvest period and consists of field marking, pruning, thinning, debudding, and deleafing. (MCC at 4.) Harvest work typically involves one of two tasks: picking or packaging fruit. (*Id*. at 5.) Pickers cut grapes from the vine, clip the bunches, and place the bunches in a tub, while packers remove the bunches from the tubs and place them in crates for shipment to a cold storage facility. (*Id.*) Defendants pay crew laborers on either an hourly basis, a piece-rate basis, or a mixed basis. (MCC at 6.) Piece-rate payment for picking ranged between $2.50 and $5.00 per tub, and piece-rate payment for packing ranged between $1.00 and $2.00 per box. (*Id.*) Field marking is also compensated on a piece-rate basis, generally at five cents per mark tied. (*Id.*) Crew laborers could transition from hourly to piece-rate payment over the course of a single day. (*Id.*)

Defendants tracked piece-rate wages owed to its workers for grapes picked and packed through tally cards given to crew laborers at the start of each day. (*Id.*) Each packed tub or crate an employee produced resulted in that employee receiving a punch on his tally card. (*Id.* at 6–7.) The number of punches would be added to calculate the total piece-rate payment owed to that employee for his day's work. (*Id.* at 7.) Defendants tabulated employees' wages on a weekly basis, checking to make sure all employees, including piece-rate employees, earned at least the minimum wage. (*Id.* at 7–8.) If a piece-rate employee's weekly pay was less than the minimum wage for that one-week period, the employee's pay check would be supplemented. (*Id.*)

In accordance with California Labor Code § 226.7 and Industrial Welfare Commission ("IWC") Wage Order 14-2001, defendants allowed employees to take ten-minute rest breaks for every four-hour period worked, or major fraction thereof. (*Id*. at 8; Employee Manual at 20.) Defendants conducted audits to ensure employees were being offered rest breaks. (Doc. No. 34-31.) According to defendants, they implemented a substantial wage policy change in October 2013 and began to compensate piece-rate employees for rest periods separate from those employees' piece-rate earnings. (Doc. No. 53 at ¶ 3.) Beginning in 2013, piece-rate employees were paid for earned ten-minute rest periods at a rate of $10.00 per hour. (*Id*. at ¶ 4.) Defendants increased this amount to $11.00 per hour in 2014 and to each employee's average hourly piece-

rate in 2015. (*Id*. at ¶¶ 5–6.)

On February 3, 2014, plaintiffs filed a complaint against Gerawan Farming, Inc. and Gerawan Farming Partners, Inc. ("defendants") alleging violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), codified at 29 U.S.C. §§ 1801 *et seq*., as well as various California labor laws. (Doc. No. 2.) More specifically, plaintiffs asserted the following state law claims: (1) failure to pay overtime and all wages due under California Labor Code §§ 1194 and 1198; (2) failure to pay minimum wages under California Labor Code § 1194; (3) failure to compensate for rest breaks under California Labor Code § 226.7 and IWC Wage Order 14-2001; (4) failure to pay wages due to plaintiffs and potential class members upon being discharged under California Labor Code § 203; and (5) for violation of California's Unfair Competition Law under California Business and Professions Code §§ 17200 *et seq*. (*Id.* at 11–17.)

On May 20, 2016, the court granted plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. (Doc. No. 57.) The court certified the following subclasses:

> Piece-Rate Subclass I: All individuals who have been employed, or are currently employed, by defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 up to October 2013.
>
> Piece-Rate Subclass II: All individuals who have been employed, or are currently employed, by defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from October 2013 up to the present.
>
> Minimum Wage Subclass: All individuals who have been employed, or are currently employed, by defendants as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 to the present, whose compensation for any shift totaled less than the minimum wage.
>
> Former Employee Subclass: All individuals who have been employed, or are currently employed, by Defendant Gerawan as a non-exempt "field worker" or similar titles, who were paid a piece-rate from February 3, 2010 to the present, who were laid off at the end of a season.

(*Id.* at 29–30.)

On June 3, 2016, defendants filed a motion for reconsideration of the court's order granting plaintiffs' motion for class certification. (Doc. No. 58.) The court denied the motion for

reconsideration on August 23, 2016 and subsequently ordered the parties to meet and confer regarding the form and manner of class notice. (Doc. No. 67.) On September 16, 2016, the court approved the form and manner of class action notice proposed by the parties on September 12, 2016. (Doc. Nos. 71, 72.) On September 20, 2016, defendants filed a motion to stay the action pending resolution of their Rule 23(f) petition to the Ninth Circuit. (Doc. No. 73.) The court denied the motion to stay and ordered defendants to provide the class list to Rust Consulting, Inc. and directed that notice to all class members be mailed within twenty-one days of the date of that order. (Doc. No. 78.) The Ninth Circuit denied defendants' Rule 23(f) petition on November 16, 2016. (Doc. No. 80.)

On November 7, 2016, Rust Consulting, Inc. mailed notices to class members, which produced a certified class list consisting of 6,417 class members who did not opt out of the class. (Doc. No. 107 at 11.) Thereafter, the parties conducted extensive discovery. (*Id.*) By May 2017, defendants had produced time and pay data for all 6,417 class members, which class counsel submitted to their expert for analysis. (*Id.*) On November 29, 2018, the parties participated in a private mediation with mediator Francis J. "Tripper" Ortman III, which resulted in a settlement agreement. (*Id.*)

Under the proposed settlement agreement, defendants would pay a maximum settlement amount of $5,000,000. (*Id.* at 8.) The agreement provides the following allocation of that payment: (i) attorneys' fees of one-third, or $1,500,000, to be paid to class counsel; (ii) litigation costs not to exceed $85,000, to be paid to class counsel; (iii) estimated settlement administration fees not to exceed $30,000 to be paid to the administrator Rust Consulting, Inc.; (iv) class representative incentive award of $20,000, with $10,000 to be paid to each named plaintiff; and (v) the remaining estimated net settlement amount of $3,365,000 to be distributed to class members. (Doc. No. 107-2, Class Action Settlement Agreement ("Settlement Agreement") at 16.)

The settlement is non-reversionary, and unclaimed amounts from the proposed settlement amount will be re-allocated to the class members participating in the settlement through a second distribution. (Doc. No. 107 at 14.) If there is an insufficient amount in uncashed checks to cover

the costs of the second distribution, or if there are uncashed funds remaining after the expiration of the checks in the second distribution, the uncashed funds will be allocated as cy pres, with 50 percent of such funds being sent to the Central Valley Farmworker Foundation and the other 50 percent to California Rural Legal Assistance, Inc. (*Id.*)

On April 11, 2019, plaintiffs filed the present unopposed motion for preliminary approval of the class action settlement. (*Id.* at 1.) Plaintiffs seek an order: (i) preliminarily approving the settlement agreement; (ii) approving the proposed notice form and method of service; (iii) confirming the appointment of plaintiffs as class representatives; (iv) confirming the appointment of Eric Kingsley and Liane Katzenstein of Kingsley & Kingsley, APC and Mario Martinez and Edgar Aguilasocho of Martinez Aguilasocho & Lynch, APLC as class counsel[1]; (v) confirming the appointment of Rust Consulting, Inc. as settlement administrator; (vi) setting deadlines for mailing settlement documents, opting out of, or objecting to the settlement; and (vii) scheduling the hearing date for final approval of the class settlement. (*Id.* at 9.)

**LEGAL STANDARD**

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members.

---

[1] The court will not address further plaintiffs' third and fourth requests in this order, having previously found that named plaintiffs and class counsel will fairly and adequately protect the interests of the subclasses in its May 20, 2016 order granting plaintiffs' motion for class certification. (*See* Doc. No. 57.)

5

*Id.* Second, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, plaintiffs move for preliminary approval of a class action settlement. Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); Newberg on Class Actions § 13:13 (5th ed. 2011).

## DISCUSSION

### A. Preliminary Fairness Determination

Plaintiffs seek preliminary approval of the proposed settlement. (Doc. No. 107.) Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014). However, a district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

1. Procedural Fairness

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

On November 29, 2018, the parties attended a private mediation with Francis J. "Tripper" Ortman III, who is an experienced mediator, and reached an agreement with respect to this settlement. (Doc. No. 107 at 11.) Plaintiffs contend that the parties reached this settlement agreement following the exchange of discovery, depositions of defendants' 30(b)(6) witnesses, certification of the classes, extensive motion practice, and arm's length negotiations with the assistance of a skilled mediator. (*Id.* at 8.) Moreover, plaintiffs represent that discussions between counsel for the parties, extensive formal discovery, as well as the investigation and evaluation of plaintiffs' claims, have permitted each of the parties to assess the relative merits of and defenses to plaintiffs' claims. (Doc. No. 107-1, Declaration of Eric B. Kingsley ("Kingsley Decl.") at ¶ 6.) Plaintiffs maintain that the proposed settlement agreement is fair, reasonable, and adequate in light of all known facts and circumstances and is in the best interest of the class. (*Id.* at ¶ 3.) Based on these representations, it appears that the parties' negotiations constituted genuine, informed, arm's length bargaining.

2. Substantive Fairness

a. Adequacy of the Settlement Amount

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible

approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, the total proposed settlement is for $5,000,000. The portion of the settlement allocated to the settlement class is an estimated $3,365,000. (Settlement Agreement at 16.) Plaintiffs' counsel estimates the maximum possible recovery with respect to all of the claims to be $16,458,758. Thus, the proposed allocation of $3,365,000 to the settlement class under the proposed agreement represents approximately 20 percent of plaintiffs' maximum possible recovery. This settlement amount is not per se unreasonable, and district courts in California have found lower percentage recoveries under some circumstances to be reasonable for this purpose. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15 percent found to be preliminarily fair).

Although plaintiffs conclude that the maximum possible recovery on all their claims is approximately $16,458,758 plus attorneys' fees and costs, they argue that settlement for a discounted amount is appropriate here for a number of reasons. First, plaintiffs observe that there are risks associated with their rest period claim given that defendants contend that they maintained a universal rest period policy for all field workers and have produced 451 declarations from field workers who attested to taking rest periods while performing piece-rate work in accordance with that rest period policy. (Doc. No. 107 at 24; Kingsley Decl. at ¶¶ 22–24.) Moreover, plaintiffs note that, if defendants were to succeed in their constitutional challenge to Assembly Bill 513 at issue in *Fowler Packing Company, Inc. v. Lanier, et al.*, Case No. 1:16-cv-01060-DAD-SAB, plaintiffs' claims in this class action would face significant challenges. (Doc. No. 107 at 25; Kingsley Decl. at ¶¶ 32–38.) Furthermore, plaintiffs note that defendants contend their practice of calculating minimum wages owed to employees on a weekly, rather than a daily basis, resulted in the overpayment of wages instead of the underpayment of wages as alleged by plaintiffs. (Doc. No. 107 at 26; Kingsley Decl. at ¶ 43.) Finally, plaintiffs point out that the parties disagreed considerably as to the value of plaintiffs' claim for waiting time penalties, with

8

defendants arguing class members are entitled to one waiting time penalty because multiple waiting time penalties would be unconstitutionally excessive. (Doc. No. 107 at 27; Kingsley Decl. at ¶ 47.) Given defendants' numerous anticipated defenses and the risks to plaintiffs posed by litigating those issues, the court concludes that the amount to be paid to the settlement class under the parties' proposed settlement to be substantively fair, reasonable and adequate.

            b.   *Attorneys' Fees*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five

percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

Here, in addition to the AWPA claim, plaintiffs bring various California state law claims. Accordingly, California law governs the award and calculation of attorneys' fees. Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See In re Bluetooth*, 654 F.3d

10

at 944.

The proposed settlement in this case provides that class counsel will seek an award of attorneys' fees not to exceed one-third, or $1,500,000, of the total settlement amount.[2] (Settlement Agreement at 15–16.) This amount is above the Ninth Circuit's benchmark. *See Bluetooth*, 654 F.3d at 947 (setting a 25 percent benchmark); *Staton v. Boeing Co.*, 327 F.3d 938, 952 n.15 (9th Cir. 2003) (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). However, this percentage of attorneys' fees is not unreasonable as an upper bound. As such, the court approves the attorneys' fee request on a preliminary basis. *See In re Activision Sec. Litig.*, 723 F. Supp. at 1377 ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). In connection with the final fairness hearing, the court will cross check the requested attorneys' fees with the lodestar amount based upon counsel's submission and make a final determination of whether the requested amount is reasonable.

### c. Incentive Payment

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *W. Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and the court looks to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*,

---

[2] The original order granting preliminary approval contained a typographical error indicating this amount to be $450,000. (Doc. No. 116 at 11.) This amended order corrects that error. However, the court also notes that the Settlement Agreement states that "Plaintiffs intend to apply for an award of attorneys' fees for Class Counsel not to exceed one-third (33.33%) of the Maximum Settlement Fund ($1,500,000.00)." The court observes that $1.5 million is 30% of $5 million, not 3.33%. Any confusion in this regard can be clarified by the parties in applying for final approval of the settlement.

11

327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Thus, incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that reflect a significant disparity between the incentive awards and the payments to the rest of the class members may be found to undermine the adequacy of the class representatives. *Id.* at 1164–65. The core inquiry is whether an incentive award creates a conflict of interest, and whether plaintiffs "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental*, 779 F.3d at 943.

Here, plaintiffs have requested a total incentive award of $20,000, with each named plaintiff receiving $10,000. (Settlement Agreement at 15.) In support of this request, plaintiffs contend that they have expended significant time and effort to assist with litigation by providing information regarding the nature of their claims, consulting with class counsel on multiple calls, regularly discussing the status of the case, and providing information to other class members. (Doc. No. 107 at 32.) Additionally, plaintiffs assert that the proposed incentive award takes into account the risk they undertook for paying defendants' legal fees and costs if defendants had prevailed at trial, as well as the possibility that other employers in the farming industry and small community would refuse to hire them given the filing of this class action. (*Id.*)

An incentive award of $20,000 amounts to 0.4 percent of the overall settlement amount of $5,000,000. In comparison, under the net settlement amount of $3,365,000 for the class, each of the 6,417 class members would receive an average payment of roughly $524. This is in line with other incentive awards that have been approved by this court. *See, e.g.*, *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (awarding $15,000 in total incentive payments from a $4.5 million fund, or 0.33 percent of the fund, where average class recovery was approximately $500); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (approving incentive payments to two named plaintiffs that, combined, equaled approximately 0.68 percent of the fund); *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-

BAM, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (awarding lowered incentive payment of $15,000, or 0.4 percent of the fund). Because the court finds that the proposed incentive award is reasonable, the court approves it on a preliminary basis. At the final approval hearing, the court will review plaintiffs' evidence that the requested incentive award is warranted here—i.e., evidence of the specific amount of time plaintiffs spent on this litigation, the particular risks and burdens carried by the named plaintiffs as a result of bringing this action, or the particular benefit that plaintiffs provided to counsel and the class as a whole throughout the litigation. *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013).

### d. Release of Claims

Finally, the release in the parties' proposed settlement agreement appropriately tracks the claims at issue in this case. The proposed settlement defines "Released Claims" as:

> [A]ny and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, damages, attorney's fees, action or causes of action of whatever kind or nature . . . related to or that reasonably could have arisen out of the same facts alleged in the Action, including, but not limited to, all claims related to the Migrant and Seasonal Agricultural Worker Protection Act. This Release shall include, without limitation, claims that were raised, or that reasonably could have been raised, under any applicable Wage Order (in effect during the Class Period and as subsequently amended) and California Labor Code provisions, including Labor Code §§ 200, 203, 205.5, 218.5, 221, 226, 226.7, 1194, 1194.2, 1197, 1198 based on alleged violations of these Labor Code provisions. The period of the Released Claims shall extend through the Preliminary Approval Date. The Released Claims do not cover any claims that have been alleged in the action *Rangel v. Gerawan Farming, Inc., Gerawan Farming Partners, Inc.* which is currently pending in the California Superior Court, County of Fresno as Case No. 16CECG02372.

(Doc. No. 107 at 15.) In tracking plaintiffs' claims in this action, the settlement does not release unrelated claims that class members have against defendant. *Cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement.").

/////

/////

13

**B. Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the proposed settlement provides that notice shall be mailed to all class members at their last known address no later than fourteen days after the claims administrator's receipt of the class data. (Settlement Agreement at 12.) The class data will be sent to the claims administrator ten days after the preliminary approval date and will include the name, last known address and telephone number, social security number, and the number of compensable weeks worked for each class member during the class period. (*Id.* at 2.) The proposed class notice furthermore sets out the means and deadlines for class members to object to the proposed settlement and to be excluded from the settlement. (*Id.* at 12–13.) The court finds that the manner of notice proposed by plaintiffs appears to be the "best notice that is practicable under the circumstances" and therefore meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B).

/////

/////

/////

/////

In addition, plaintiffs have proposed the following implementation schedule:

| | |
|---|---|
| Deadline to provide Class Data to the Settlement Administrator | Within ten (10) calendar days after Preliminary Approval |
| Deadline for Settlement Administrator to mail Notice of Class Action settlement to all Class Members via regular U.S. Mail | Within fourteen (14) calendar days after receiving the Class Data, the Settlement Administrator will mail Notice of Class Action Settlement |
| Deadline to submit disputes to workweek information provided on the Notice of Class Action Settlement | No later than sixty (60) calendar days after the mailing of the Notices of Class Action Settlement |
| Deadline for Objections | Objections must be submitted by the Response Deadline, sixty (60) days after Notice of Class Action Settlement is mailed by the Settlement Administrator |
| Deadline for Plaintiffs to file motion for final approval of settlement and application for attorneys' fees and costs, and class representatives' enhancement payment | TBD by Court |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs and class representatives' service payment. | TBD by the Court, but not earlier than 30 days after the Response Deadline |

(Doc. No. 107 at 17–18.)

The court finds that the notice and the manner of notice proposed by plaintiffs meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate in these circumstances.

## CONCLUSION

For the reasons stated above:

1. Plaintiffs' motion for preliminary approval of class action settlement (Doc. No. 107) is granted;

2. The proposed notice and claim form are found to conform with Federal Rule of Civil Procedure 23 and are approved;

3. Rust Consulting, Inc. is approved as settlement claims administrator;

4. The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

5. The hearing for final approval of the proposed settlement is set for December 17, 2019 at 9:30 a.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230; and

6. Plaintiffs' proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated: **August 8, 2019**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE