1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAFAEL MARQUEZ AMARO, et al.,          No.  1:14-cv-00147-DAD-SAB

12              Plaintiffs,

13        v.                                 ORDER GRANTING FINAL APPROVAL OF
                                             CLASS ACTION SETTLEMENT AND
14   GERAWAN FARMING INC., et al.,           AWARDING ATTORNEYS' FEES, COSTS
                                             AND INCENTIVE AWARDS
15              Defendants.
                                             (Doc. No. 118)
16

17          This matter came before the court on December 17, 2019 for hearing on the unopposed

18   motion for final approval of a class action settlement and for an award of attorneys' fees, costs,

19   and incentive payments, filed on behalf of plaintiffs Rafael Marquez Amaro and Jesus Alarcon

20   Urzua (collectively, "plaintiffs").[1]  (Doc. Nos. 118, 118-1.)  Attorneys Mario Martinez and Liane

21   Katzenstein Ly appeared on behalf of plaintiffs and the class.  Attorneys Ronald Barsamian,

22   Bradley Hamburger, and Tiffany Phan appeared on behalf of defendants.  For the reasons set

23   forth below, the court will grant final approval of the class action settlement and will award

24   attorneys' fees, costs, and incentive payments.

25   _____
     [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
26   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district has reached crisis proportion.  Unfortunately, that situation sometimes results in the
27   court simply not being able to issue orders in submitted civil matters in an acceptable period of
     time.  This situation is frustrating to the court, which fully realizes how incredibly frustrating it is
28   to the parties and their counsel.

1

**BACKGROUND**

The court previously granted preliminary approval of the settlement in this certified wage-and-hour class action on August 8, 2019.  (Doc. No. 117.)  Pertinent factual details may be found in that order and will not be repeated here.  Following the grant of preliminary approval, on August 30, 2019, the settlement administrator mailed the court-approved class notices to all 6,417 class members identified on the certified class list.  (Doc. No. 118-13 at ¶¶ 7–9.)  The settlement administrator performed additional address searches and obtained updated addresses for 620 of the 1,195 notices that were returned as undeliverable by the post office.  (*Id.* at ¶ 10.)  In total, 704 class notices remained undeliverable despite the settlement administrator's additional efforts.  (*Id.*)  The deadline to object to the settlement was October 29, 2019.  (Doc. No. 118-14 at 4.)  As of the filing of plaintiffs' pending motion for final approval on November 19, 2019, no objections to the settlement have been received or filed with the court, and no class members have requested exclusion from the settlement.  (Doc. No. 118-13 at ¶¶ 14–15.)  Moreover, aside from the named plaintiffs who appeared in support of their motion for final approval, no class members appeared at the final approval hearing.

**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

The court previously evaluated the standards for class certification in its order granting plaintiffs' motion for class certification on May 20, 2016 (Doc. No. 57) and finds no basis to revisit any of the analysis contained in that order.  Accordingly, the court proceeds directly to consideration of whether the settlement in this case is appropriate under Rule 23(e).  *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.

2

2004).  Rule 23 requires that:  (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The settlement agreement in this action was filed on the court's docket (*see* Doc. No. 118-8), and class members have been given an opportunity to object thereto (*see* Doc. No. 118 at 15).  The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

A.      Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery."  *Hanlon*, 150 F.3d at 1025.  It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement because it serves as "adequate notice of class counsel's interest in the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found the notice to be satisfactory.  (Doc. No. 117 at 14.)  As noted above, on August 30, 2019, the settlement administrator mailed the court-approved class notices to all 6,417 class members identified on the certified class list.  (Doc. No. 118-13 at ¶¶ 7–9.)  After performing advanced address searches for 1,195 notices that were returned as

1  undeliverable, the settlement administrator re-mailed notices.  (*Id.* at ¶ 10.)  Ultimately, a total of

2  704 notices remained undeliverable, which represents 11% of all notices sent.  (*Id.*; Doc. No. 118

3  at 15.)  Accordingly, about 89% of the class received the mailed notice packets.

4      Given the above, the court concludes that adequate notice was provided to the class here.

5  *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (courts need not ensure all class

6  members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus*

7  *Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23

8  requires that 'reasonable effort' be made to reach all class members, it does not require that each

9  individual actually receive notice.").  The court accepts the reports of the settlement administrator

10  and finds that sufficient notice has been provided satisfying Rule 23(e)(1).

11  **B.**     **Final Fairness Hearing**

12      On December 17, 2019, the court held a final fairness hearing, at which class counsel and

13  defense counsel appeared.  No class members, objectors, or counsel representing the same

14  appeared at the hearing.  For the reasons explained below, the court now determines that the

15  settlement reached in this case is fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

16      At the final approval stage, the primary inquiry is whether the proposed settlement "is

17  fundamentally fair, adequate, and reasonable."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th

18  Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the

19  individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at

20  1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir.

21  1982)); *see also Lane*, 696 F.3d at 818–19.  Having already completed a preliminary examination

22  of the agreement, the court reviews it again, mindful that the law favors the compromise and

23  settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

24  Cir. 2008); *Churchill Vill., L.L.C.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d

25  1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  Ultimately, "the decision to

26  approve or reject a settlement is committed to the sound discretion of the trial judge because he

27  [or she] is exposed to the litigants and their strategies, positions, and proof."  *Staton*, 327 F.3d at

28  953 (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

    1.    Strength of Plaintiffs' Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id.* Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

Here, the parties recognize that there are risks associated with each of plaintiffs' three main claims that: (1) defendants' piece-rate compensation system is unlawful because field workers are not paid for their rest periods; (2) defendants' calculation of minimum wages based on weekly averages, rather than on a daily basis, is unlawful because it results in underpayment of minimum wages; and (3) class members are entitled to waiting time penalties as a result of defendants' failure to compensate for rest periods and failure to pay minimum wages. (Doc. No. 118 at 16–22.) Plaintiffs' arguments on the merits of their unpaid rest period claim are strong because defendants' records show that field workers indeed took rest periods but were not compensated for those rest periods. (*Id.* at 19.) Yet defendants maintain that there is still uncertainty on whether plaintiffs would ultimately prevail on their unpaid rest period claim in light of the unique and complicated appellate issues at play in the pending case *Fowler Packing*

*Company, Inc. v. Lanier, et al.*, No. 1:l 6-cv-001060-DAD-SAB, in which employers challenge the constitutionality of a carve-out in a safe harbor provision of piece-rate wage law. (*Id.* at 19– 20.) Defendants contend that if they succeed in that constitutional challenge, plaintiffs would face difficulties in prevailing on the merits because defendants would be able to rely on the safe harbor provision as an affirmative defense to plaintiffs' unpaid rest period claim. (*Id.*)

As to plaintiffs' minimum wage claim, plaintiffs contend that defendants failed to pay field workers minimum wage when their aggregate wages for the week exceeded the minimum wage, but their daily wages fell below the minimum, resulting in underpayment and a violation of California law, which requires that minimum wages be paid for each our worked in a day. (*Id.* at 21.) Defendants disagree and argue that there are actually instances of overpayment because in calculating the weekly average, they used defendants' base rate of pay, which was higher than the minimum wage, and thus any alleged underpayments would have been offset by overpayments. (*Id.*)

As to plaintiffs' claim for waiting time penalties, the parties disagree considerably regarding whether the workers, who are laid-off at the end of each harvest season, are entitled to multiple waiting time penalties (plaintiffs' position), or just one (defendants' position). Indeed, the difference in value between the parties' respective positions is stark. Class counsel's expert analyzed the class data for the entire class and determined that the value of the waiting time penalties claim is about $14 million if limited to one penalty for each class member, whereas the value for the claim if not so limited would be almost $26 million. (*Id.* at 24.) In addition, the parties recognize a substantial risk that plaintiffs' waiting time penalties claim may be limited to their underlying claim for unpaid minimum wages, and not their unpaid rest period claim, because the California Court of Appeal recently held that derivative waiting time penalties may not be available where employers fail to provide rest periods. (*Id.* at 22) (citing *Naranjo, et al. v. Spectrum Sec. Servs., Inc.* 40 Cal. App. 5th 444 (2019)).

Therefore, it appears that while plaintiffs have meritorious claims and comprehensive employment data to substantiate the value of their claims on a class-wide basis, it is far from certain that they would have prevailed on those claims or achieved full recovery on them,

1   particularly in light of the substantial appellate risks.  The court finds that consideration of this

2   factor weighs in favor of granting final approval of the settlement in this action.

3          2.    <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

4          "[T]here is a strong judicial policy that favors settlements, particularly where complex

5   class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class*

6   *Plaintiffs*, 955 F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and

7   expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016

8   WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-

9   AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).  Employment law class actions

10  are, by their nature, time-consuming and expensive to litigate.  *Hightower v. JPMorgan Chase*

11  *Bank, N.A.*, No. 11-cv-1802-PSG-PLA, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).

12         Though the parties have been litigating this case for over six years, that timeline would be

13  extended even further by litigating this case to a final resolution through a jury trial.  The parties'

14  expenses would increase as litigation costs continue to accrue, and any recovery of a monetary

15  judgment, which is not guaranteed, would be prolonged.  In particular, the parties assert that

16  because this case involved over 6,000 class members and voluminous paper records, "[p]reparing

17  this case for trial would be incredibly costly."  (Doc. No. 118 at 23.)  In addition, the parties

18  contend that the appellate risks in this case were greater than normal given the uncertainties and

19  issues involved in the pending *Fowler* case.  (*Id.*)

20         Thus, consideration of this factor also weighs in favor of granting final approval.

21         3.    <u>Risk of Maintaining Class Action Status Throughout Trial</u>

22         The court previously certified the class and plaintiffs are confident that they would be able

23  to maintain class certification.  (*Id.*)  However, defendants contend that decertification is a

24  possibility, depending on the outcome of the pending *Fowler* case.  In the court's view, there is

25  not a substantial risk of decertification or other reason to call certification of the subclasses in this

26  case into question.  Accordingly, the court finds this factor weighs against final approval.

27  /////

28  /////

7

1    4.    Amount Offered in Settlement

2            To evaluate the fairness of the settlement award, the court should "compare the terms of

3    the compromise with the likely rewards of litigation."  *See Protective Comm. for Indep.*

4    *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-

5    settled law that a cash settlement amounting to only a fraction of the potential recovery does not

6    *per se* render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

7    454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible

8    approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

9    expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust*

10   *Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

11           Here, the parties have agreed to a non-reversionary settlement of $5,000,000 (the "gross

12   settlement fund").  (Doc. No. 118 at 12, 24.)  The settlement agreement provides for allocation of

13   the gross settlement fund as follows:  (1) payment for attorneys' fees in the amount of

14   $1,500,000, which is one-third of the gross settlement fund; (2) class counsel's litigation expenses

15   in the amount of $79,841.25; (3) settlement administration costs estimated to be $30,000;

16   (4) incentive awards of $20,000 to plaintiff ($10,000 each); and (5) distribution to the certified

17   subclasses in the amount of the remaining funds, estimated to be $3,370,158.80 (the "net

18   settlement fund").  (*Id.* at 12.)  The net settlement fund will be distributed to class members "on a

19   pro rata basis based on the total number of compensable work weeks" as defined in the settlement

20   agreement.  (*Id.* at 13.)  The settlement administrator estimates that the average payment per class

21   member is $524.38, with the lowest payment estimated at $12.83 and the highest payment

22   estimated at $3,860.45.  (Doc. No. 118-13 at ¶ 16.)

23           Based on the expert analysis of the employment data provided by defendants for all 6,417

24   class members, plaintiffs allege that the class is entitled to approximately $16,458,758.  (Doc. No.

25   118 at 23.)  Broken down by claim, the expert valued the minimum wage claim at $504,832, the

26   rest period claim at $1,869,187, and the waiting time penalties claim at $14,084,739.  (*Id.* at 23–

27   24.)  Thus, class counsel determined that the full value of the case without accounting for waiting

28   time penalties was $2,374,019.  (*Id.*)  Given that the parties vehemently disagree on whether

8

1   plaintiffs and the class would be entitled to waiting time penalties, as explained above, class

2   counsel contend that the gross settlement amount of $5,000,000 was fair and reasonable in this

3   case. (*Id.*)

4        As the court observed in its order granting preliminary approval, the estimated net

5   settlement fund of $3,370,158.80 represents approximately 20 percent of the maximum possible

6   recovery as calculated by their expert to be approximately $16,458,758. (Doc. No. 117 at 8–9.)

7   However, as the parties note, this approximated value does not account for any discounts or give

8   any weight to defendants' defenses. (Doc. No. 118 at 24.) The court has previously assessed the

9   fairness and adequacy of the settlement amount, in light of the circumstances of this case, and

10  found that a 20 percent recovery rate is within the range of the percentage recoveries that

11  California district courts have found to be reasonable. (Doc. No. 117 at 7–9.) Consistent with the

12  reasons stated in the court's prior order granting preliminary approval, the court finds that the

13  settlement amount in this case is appropriate and fair. Thus, consideration of this factor also

14  weighs in favor of final approval.

15       5.       Extent of Discovery Completed and Stage of the Proceedings

16        "In the context of class action settlement, 'formal discovery is not a necessary ticket to

17  the bargaining table' where the parties have sufficient information to make an informed decision

18  about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

19  (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class

20  action settlement thus "is proper as long as discovery allowed the parties to form a clear view of

21  the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

22  443, 454 (E.D. Cal. 2013). A settlement is presumed fair if it "follow[s] sufficient discovery and

23  genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D.

24  Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D.

25  Cal. 2004)). The court must consider whether the process by which the parties arrived at their

26  settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan*

27  *v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

28  /////

Here, the parties engaged in significant investigation and substantial discovery, including conducting several rounds of written discovery and depositions, and production of thousands of documents.  (Doc. No. 118 at 24–25.)  Class counsel also retained an expert to analyze the employment data for all of the class members.  (*Id.*)  Based on that discovery, the parties engaged in a private mediation with an experienced mediator, which led to the settlement agreement now pending before the court for final approval.  (Doc. No. 117 at 7.)  As detailed in the court's order granting preliminary approval, the court is satisfied that the parties' negotiations constituted genuine and informed arm's length bargaining.  (*Id.*)

Accordingly, the court concludes that consideration of this factor also weighs in favor of granting final approval.

6.      Experience and Views of Counsel

Class counsel Eric B. Kingsley of Kingsley & Kingsley, APC, and Mario Martinez of Martinez Aguilasocho & Lynch, APLC, have filed declarations in support of plaintiffs' pending motion for final approval, detailing their extensive experience in litigating class actions, explaining why this settlement is fair and reasonable in their view, and describing the challenges that impact legal representation of farmworkers.  (Doc. Nos. 118-2, 118-9.)  Based on their experience and qualifications, class counsel have concluded that this settlement is fair and reasonable.  Thus, consideration of class counsel's experience and expressed opinions in this regard also weighs in favor of final approval of the settlement.

7.      Presence of a Governmental Participant

There is no governmental participant in this action, so this factor is not at issue.

8.      Reaction of the Class Members

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

/////

10

1    According to the declaration of Amanda Myette, senior project manager at Rust

2    Consulting, Inc., who serves as the settlement administrator in this case, no member of the class

3    has filed an objection to the settlement pending before the court for final approval.  (Doc. No.

4    118-13 at ¶¶ 1, 14–15.)  Similarly, no class members appeared at the final fairness hearing to raise

5    any objections to the settlement.  Accordingly, consideration of this factor weighs significantly in

6    favor of granting final approval.

7    In sum, after considering all of the relevant factors, the court finds on balance that the

8    settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

9    ## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS

10    In plaintiffs' motion for final approval of the class action settlement, plaintiffs also request

11    awards for class counsel's fees, litigation expenses, and incentive payments for plaintiffs.  (Doc.

12    No. 118-1.)

13    **A.  Attorneys' Fees**

14    This court has an "independent obligation to ensure that the award [of attorneys' fees],

15    like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In*

16    *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  This is because,

17    when fees are to be paid from a common fund, the relationship between the class members and

18    class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994

19    (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir.

20    1994).  As such, the district court assumes a fiduciary role for the class members in evaluating a

21    request for an award of attorneys' fees from the common fund.  *In re Mercury*, 618 F.3d at 994;

22    *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at

23    968.

24    The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

25    where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

26    the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

27    F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

28    common fund cases to choose either method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No.

1    14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either

2    approach, "[r]easonableness is the goal, and mechanical or formulaic application of method,

3    where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v. Equitable Life*

4    *Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  The Ninth Circuit has generally set

5    a 25 percent benchmark for the award of attorneys' fees in common fund cases.  *Id.* at 1047–48;

6    *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the

7    'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

8    'special circumstances' justifying a departure.").

9         Reasons to vary the benchmark award may be found when counsel achieves exceptional

10   results for the class, undertakes "extremely risky" litigation, generates benefits for the class

11   beyond simply the cash settlement fund, or handles the case on a contingency basis.  *Vizcaino*,

12   290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55.  Ultimately,

13   however, "[s]election of the benchmark or any other rate must be supported by findings that take

14   into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit

15   has approved the use of lodestar cross-checks as a way of determining the reasonableness of a

16   particular percentage recovery of a common fund.  *Id.* at 1050 ("Where such investment is

17   minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a

18   lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a

19   higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779

20   F.3d at 955.

21        Here, the court approved plaintiffs' request for attorneys' fees on a preliminary basis,

22   finding that the requested fee amount of $1,500,000 was reasonable even though it was somewhat

23   higher than the 25% benchmark rate in the Ninth Circuit.  (Doc. No. 117 at 11.)  The court also

24   previewed that it would make a final determination on the reasonableness of the requested fee

25   amount by performing a lodestar cross-check.  (*Id.*)

26        Class counsel contend that a fee award of one-third of the common fund is reasonable here

27   for several reasons.  In their motion for final approval of attorneys' fees, plaintiffs cite to a dozen

28   cases in which courts have awarded fees equal to one-third of the common fund.  (Doc. No. 118-1

at 12–13, 16.)  Plaintiffs also assert that a fee above the 25% benchmark is warranted here because this action is a certified class action involving novel and complicated appellate issues, which required experienced class counsel, and indeed class counsel achieved "an excellent result" despite the "uncertain legal environment in these types of rest break cases."  (*Id.* at 13–14.)  In addition, class counsel contend that they showed "great skill, thoroughness, and diligence" in investigating and litigation this action, as evidenced by their success in motions practice (surviving a motion to dismiss, certifying the class, surviving a motion to reconsider class certification, and opposing defendants' motion to stay pending appellate review).  (*Id.* at 15.) Further, this litigation was pursued on a purely contingency-fee basis, requiring class counsel to invest significant time and money on behalf of the class "even though there was a high risk of non-payment due to constantly evolving law and the many other risks described" in the pending motion.  (*Id.* at 13–14.)  Class counsel spent approximately 1,700 hours working on this case.  (*Id.* at 16.)  Absent successful resolution, none of this attorney time would have been compensated. (*Id.*)  In addition, class counsel incurred almost $80,000 in out-of-pocket expenses litigating the case over a six-year period.  (*Id.*)

The court agrees that consideration of all these factors support a finding that the requested fee award is fair and reasonable.  Moreover, the court notes that the absence of any objections to the settlement or requests for exclusions also supports the award of the attorneys' fees sought in this case.  The class notice specifically advised class members that class counsel would seek $1,500,000 from the gross settlement amount for attorneys' fees.  (Doc. No. 118-14 at 3.) Therefore, plaintiffs' request for attorneys' fees appears to have the support of the class and that support clearly weighs in favor of the requested award.

The court next turns to the lodestar amount, in order to cross-check the reasonableness of the requested attorneys' fee award.

Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).

1    Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours

2    worked, a lodestar multiplier is often applied.  "Multipliers in the 3–4 range are common in

3    lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield*

4    *Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D.

5    534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (stating courts

6    typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher,

7    and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins.*

8    *Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples

9    ranging from one to four are frequently awarded in common fund cases when the lodestar method

10   is applied.") (quoting 4 NEWBERG ON CLASS ACTIONS § 14.7).

11          Here, class counsel assert that 1,700 hours of attorney and paralegal time were expended

12   in litigating this case.  (Doc. No. 118-1 at 17–18.)  In calculating their lodestar, class counsel

13   utilizes an hourly rate of $750 for attorneys Eric B. Kingsley, Mario Martinez, and Thomas

14   Lynch, each of whom have over 20 years of relevant practice experience.  (Doc. Nos. 118-2 at ¶

15   81; 118-9 at ¶¶ 1, 6.)  Class counsel assert that these rates are reasonable and have been approved

16   in a similar certified class action.  (Doc. No. 118-1 at 17.)  However, that partner rate of $750 is

17   above the rates that have typically been employed by judges in this district.  The undersigned has

18   previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495

19   for associates, and $545 and $695 for senior counsel and partners.  *See Emmons v. Quest*

20   *Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017).

21   Since this hourly rate will be used solely for the purpose of cross-checking the percentage of the

22   common fund awarded as attorneys' fees, the court need not and will not define precisely the

23   appropriate rates for this district.

24          While class counsel calculates that their lodestar is $1,553,157 based on that high hourly

25   partner rate (Doc. No. 118-1 at 17), the court notes that if the previously court-accepted hourly

26   rate of $695 was applied to the 1,438.42 total hours expended by attorneys Eric B. Kingsley,

27   Mario Martinez, and Thomas Lynch, and the rate for all other attorneys and paralegals was

28   applied as requested, the total lodestar would be $1,466,588.90.  To reach the amount of

14

1   $1,500,000 in fees that class counsel has requested here, a multiplier of approximately 1.02 would

2   be applied to that lodestar.  The court finds that this would be an extremely modest and

3   appropriate multiplier in this case.

4        Thus, whether the hourly rates employed by class counsel are applied, or if instead the

5   court calculates a lodestar based on previously accepted hourly rates by judges in this district and

6   applies a modest multiplier, the lodestar cross-check supports the requested award of $1,500,000

7   in attorneys' fees, an amount equal to one-third of the total fund in this case.

8   **A.**      **Expenses of Class Counsel**

9        Additionally, class counsel seeks to recover the costs expended on this litigation.  Expense

10   awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client

11   and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d

12   1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for:  "(1) meals, hotels, and

13   transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and

14   overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and

15   investigators; and (9) mediation fees." *Id.*

16        Here, class counsel requests reimbursement of their actual expenses in the amount of

17   $79,909.52.  (Doc. No. 118-1 at 18.)  The court has reviewed class counsel's declarations, which

18   attest to the costs they incurred, and finds all the expenses incurred to be quite reasonable.

19   Accordingly, the court will approve their reimbursement of expenses in the amount requested.

20   **B.**      **Incentive Award**

21        "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g*

22   *Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  However, the decision to approve such an award is

23   a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th

24   Cir. 2000).  Generally speaking, incentive awards are meant to "compensate class representatives

25   for work done on behalf of the class, to make up for financial or reputational risk undertaken in

26   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

27   general." *Rodriguez*, 563 F.3d at 958–59.  The Ninth Circuit has emphasized that "district courts

28   must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

adequacy of the class representatives . . . .  [C]oncerns over potential conflicts may be especially

pressing where, as here, the proposed service fees greatly exceed the payments to absent class

members."  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal

quotation marks and citation omitted).  A class representative must justify an incentive award

through "evidence demonstrating the quality of plaintiff's representative service," such as

"substantial efforts taken as class representative to justify the discrepancy between [her] award

and those of the unnamed plaintiffs."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal.

2008).  Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff

undertakes a significant "reputational risk" by bringing suit against their former employers.

*Rodriguez*, 563 F.3d at 958–59.  The district court must evaluate their awards individually, using

"relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class,

the degree to which the class has benefitted from those actions, . . . the amount of time and effort

the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace

retaliation."  *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.

1998)).

Here, plaintiff Amaro and plaintiff Urzua each seek an incentive award of $10,000 for the

services as class representatives in this action.  (Doc. No. 118-1 at 19.)  As the court noted in its

order granting preliminary approval, an award of $10,000 is amounts to two percent of the gross

settlement amount, which is in line with other incentive awards that have been approved by the

undersigned.  (Doc. No. 117 at 12.)  Moreover, plaintiffs Amaro and Urzua have both expended

significant time and effort in prosecuting this case on behalf of the class.  (Doc. Nos. 118-1.)

Plaintiff Amaro has declared that he spent approximately 382.5 hours over the past six years

reviewing records, talking to co-workers, assisting class counsel, attending the mediation, and

organizing class members to keep them apprised of the status of this case.  (Doc. No. 118-12.)

Plaintiff Urzua has similarly declared that he spent approximately 378 hours performing those

same tasks.  (Doc. No. 118-11.)  The court also notes that both plaintiffs attended the final

approval hearing and expressed to their counsel that they felt it was important that they be

present.

1    In light of this supporting evidence and detail, the court finds the requested incentive

2    payment of $10,000 each for plaintiff Amaro and plaintiff Urzua is fair and reasonable, and does

3    not destroy the adequacy of class representation in this case.  Accordingly, the court will award

4    the incentive payments as requested.

5    **C.      Settlement Administrator Costs**

6    The court previously approved the appointment of Rust Consulting, Inc. as the settlement

7    administrator.  (Doc. No. 117 at 5.)  According to the declaration of Amanda Myette, senior

8    project manager at Rust Consulting, Inc., the total cost for administration of this settlement,

9    including fees incurred and future costs for completion is $30,000.  (Doc. No. 118-13 at ¶ 17.)

10   The court finds these administration costs reasonable and will direct payment in the requested

11   amount.

12                                    **CONCLUSION**

13   For the reasons stated above:

14   1.      Plaintiffs' motion for final approval of the class action settlement (Doc. No. 118)

15           is granted and the court approves the settlement as fair, reasonable, and adequate;

16   2.      Plaintiffs' motion for attorneys' fees and costs and incentive awards (Doc. No.

17           118-1) is granted, and the court awards the following sums:

18           a.      Class counsel shall receive $1,500,000.00 in attorneys' fees and

19                   $79,909.52 in expenses;

20           b.      Plaintiff Amaro shall receive $10,000.00 as an incentive payment;

21           c.      Plaintiff Urzua shall receive $10,000.00 as an incentive payment; and

22           d.      Rust Consulting, Inc., shall receive $30,000.00 in settlement administration

23                   costs and expenses;

24   3.      The parties are directed to effectuate all terms of the settlement agreement and any

25           deadlines or procedures for distribution set forth therein;

26   /////

27   /////

28   /////

17

4.   This action is dismissed with prejudice in accordance with the terms of the parties' settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

5.   The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   __**October 12, 2020**__                    _____
                                                    UNITED STATES DISTRICT JUDGE